UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-cv-23889-BLOOM

SCOTTY SANTOS DIAZ,

    Plaintiff,

v.

SGT. INEZ MARTIN,
WARDEN JOSE COLON,
DR. FRANK PAPILLION,

    Defendants.
_____/

## ORDER DISMISSING TWO CLAIMS AND ALLOWING ONE CLAIM TO PROCEED

**THIS CAUSE** is before the Court upon Plaintiff Scotty Santos Diaz's ("Plaintiff" or "Diaz") Amended Complaint, ECF No. [16]. For the reasons set forth below, the Amended Complaint shall proceed in part and is dismissed in part.

Plaintiff has been granted permission to proceed *in forma pauperis* and is there subject to the screening provisions of 28 U.S.C. § 1915(e)(2). *See Farese v. Scherer*, 342 F.3d 1223, 1228 (11th Cir. 2003).

**I.   BACKGROUND**

Plaintiff is an inmate confined at the Dade Correctional Institution ("DCI") and he filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. ECF No. [1]. The Complaint set forth allegations that multiple prison officials violated his Eighth Amendment Rights. ECF No. [1]. The Court entered an order that Plaintiff's excessive force claim against Defendant Sgt. Inez Martin shall proceed; however, Plaintiff's claims against the rest of Plaintiff's claims were dismissed without prejudice for failure to state a claim. ECF No. [9] at 17. Specifically, Plaintiff's claims of

deliberate indifference to a serious medical need against Defendants Mark Inch, Jose Colon, and Franck Papillon in their individual and official capacities were dismissed without prejudice. ECF No. [9]. The Court granted Plaintiff leave to file an amended complaint. ECF Nos. [12], [13].

Plaintiff's Amended Complaint renews allegations against Defendants Martin, Colon, and Papillon. ECF No [16]. Plaintiff re-alleges the excessive force claim and a due process claim against Defendant Martin in her individual capacity. Id. at 17. Plaintiff also re-alleges the deliberate indifference to a serious medical need claims against Defendants Colon and Papillon. Id. at 18-20.

Plaintiff alleges excessive force and deliberate indifference to his serious medical needs resulting in injuries that aggravated his pre-existing disability. Plaintiff's allegations in the Amended Complaint are largely the same as the allegations set forth in his original complaint. The Court previously summarized Plaintiff's allegations as follows:

> Plaintiff is a visually impaired inmate suffering from severe stage Primary Open Angle Glaucoma. ECF No. [1] at 4. On May 1, 2020, while housed at Dade CI, Plaintiff was on his way to morning meal when Defendant Martin approached him and asked why he was not wearing the blue homemade face mask issued to all inmates. Id. Plaintiff politely advised Defendant Martin that someone took his blue face mask. Id. Plaintiff told Defendant Martin that the medical department approved the face mask he was using. Id. at 5. Defendant Martin then told Plaintiff that he was not going to eat without his blue mask. Id. After Plaintiff again reminded Defendant Martin that he no longer had a blue mask, she responded "I don't care what happen[ed] to it," "you're not going to eat without it," "now get out of my line or I'm going to spray you." Id. Plaintiff respectfully requested to speak with a captain and advised Defendant Martin that he was hungry and did not have any food to eat. Id. Defendant Martin became angry and threatened to spray Plaintiff if he did not move from the line. Id.
>
> Fearing being sprayed, Plaintiff stepped out of line, lay down on the sidewalk on his back in a horizontal position, placed his blind cane across his stomach, and placed both of his arms on the ground. Id. Defendant Martin became even angrier, shouting "I'm going to spray you" and "I don't care who you want to speak to." Id. at 5. Plaintiff pleaded with Defendant Martin not to spray his eyes, telling her that he had already lost total sight in one of his eyes from Glaucoma. Id. at 6. Defendant Martin then took her can of chemical agent out, placed the nozzle directly under

Plaintiff's protective eyewear, and violently sprayed into Plaintiff's surgically repaired eyes for a long period of time. *Id*. As a result of the spraying, Plaintiff experienced severe pain and was unable to breathe or see any light for several hours. *Id.*

Plaintiff previously filed complaints and grievances against Defendant Martin for her assaults on disabled inmates. *Id*. However, Defendant Martin's actions were simply "swept under the rug." *Id*. at 7. Defendant Martin's excessive use of force by spraying Plaintiff's eyes with chemical spray was intentional, willful, malicious, and with retaliatory intent. *Id.*

As a result of the spraying incident, Plaintiff was placed into administrative confinement and erroneously charged with disobeying a verbal order. *Id*. at 8. Plaintiff was dragged to an empty shower stall for decontamination. *Id*. Plaintiff advised the prison nurse that he had severe pain in his eyes and was unable to breathe well. *Id*. Plaintiff requested to see a doctor for his glaucoma but was denied any further medical treatment by a physician. *Id.*

Defendant Martin lied in her report when she wrote that Plaintiff became angry and was waiving his blind cane towards her in an aggressive manner. *Id*. at 8-9. She did so in an attempt to justify her unlawful use of excessive force against Plaintiff. *Id*. at 9.

Plaintiff continued to seek medical treatment for the severe pain in his eyes, but he never received responses to any of his medical requests. *Id.* at 10. Eventually, on June 4, 2020, more than a month after the spraying incident, Nurse Mercedes evaluated Plaintiff and determined that Dr. Altamirano needed to examine him. *Id*. at 12. Dr. Altamirano determined that both of Plaintiff's eyes were infected and prescribed him antibiotic eye drops. *Id.* Despite Plaintiff's request, "medical providers" ignored his request to be seen by optometry. *Id.*

On June 17, 2020, Plaintiff submitted another sick call request, advising medical that he continued to experience severe pain in his eyes. *Id*. A week later, Nurse Mercedes examined him and told Plaintiff that he would be seen by a doctor. *Id.* On July 3, 2020, Plaintiff again submitted a sick call request, pleading for medical attention. *Id.* Thirteen days later, on July 16, 2020, Dr. Altamirano examined Plaintiff, prescribed more antibiotics and "excedrene migraine," and advised Plaintiff he would speak to the "C.H.O." for consult with the eye specialist. *Id*. at 12-13. On August 5, 2020, Plaintiff was transported to Bascom and Palmer Eye Institute to be seen by an eye specialist. *Id.* at 13. After several tests, it was determined that Plaintiff would need surgery to alleviate the pain in his eyes. *Id.* On August 20, 2020, surgery was performed on Plaintiff's right eye. *Id.*

Despite Plaintiff's multiple grievances filed soon after the use of excessive force on May 1, 2020, Plaintiff was not seen by an eye doctor until August 5, 2020,

approximately 90 days after the incident. *Id*. During this three-month period, Plaintiff suffered from extreme pain and discomfort. *Id.*

ECF [9] at 4-6.

In this Amended Complaint, Plaintiff alleges the following additional facts. On May 5, 2020, plaintiff was found guilty at the D.R. hearing based on Defendant Martin's "fabricated report." ECF No. [16] at 10 ¶ 32. In confinement, Plaintiff lost all his rights to "access to medical when treatment is required, communication with family, maintaining your personal hygiene such as daily showers." *Id.* at 10 ¶ 33.

Plaintiff states that on July 18, 2020, he approached Defendant Colon inside of his dormitory and showed him the infections in his eyes and personally asked him to investigate the assault and to advise medical he was in need of treatment. *Id.* at 12-13 ¶ 46. Defendant Colon told Plaintiff he would email medical. *Id.* at 13 ¶ 49. Plaintiff alleges Defendant Colon and Defendant Papillon were already familiar with Plaintiff's pre-existing medical conditions because of a previously filed preliminary injunction in the Southern District of Florida with Case No. 19-cv-23954-Bloom. *Id.* at 12 ¶ 45, 15 ¶ 63. Plaintiff states that Defendant Colon never emailed medical. *Id.* at 13 ¶ 50. On July 20, 2020, in response to Plaintiff's request, DCI's legal mail representative notified Plaintiff that a copy of Plaintiff's formal complaint had been placed in Defendant Colon's mailbox. *Id.* at 13 ¶ 52.

Plaintiff seeks a (1) a declaration that the Defendants violated Plaintiff's constitutional rights; (2) the revocation of Defendant Martin's certification after a full investigation of her assaults on disabled inmates; (3) $15,000 in compensatory damages against each named defendant; (4) $10,000 in punitive damages against each named Defendant; (5) nominal damages; (6) recovery of attorney's fees and costs; and, (7) any other relief the Court deems proper. *Id.* at 21. Plaintiff's Amended Complaint is now before the Court for review.

**II.     STANDARD OF REVIEW**

Under either 28 U.S.C. § 1915(e)(2)(B)(ii) or 28 U.S.C. § 1915A, a complaint must be dismissed if the court determines that the complaint fails to state a claim on which relief may be granted. *Wright v. Miranda,* 740 F. App'x 692, 694 (11th Cir. 2018). In reviewing the complaint under § 1915(e), the court takes the allegations as true and construes them in the most favorable light. *Hughes v. Lott,* 350 F.3d 1157, 1159-60 (11th Cir. 2003); *Maps v. Miami Dade State Att'y*, 693 F. App'x 784, 785 (11th Cir. 2017) (per curiam). Complaints filed by *pro se* prisoners are held to "less stringent standards than formal pleadings drafted by lawyers . . . ." *Haines v. Kerner,* 404 U.S. 519, 520 (1972) (per curiam).

In order to "avoid dismissal for failure to state a claim, a complaint must contain factual allegations that, when accepted as true, allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Wright*, 740 F. App'x at 694 (citing *Waldman v. Conway*, 871 F.3d 1283, 1289 (11th Cir. 2017) (per curiam)). Although a *pro se* pleading is liberally construed, it must still "suggest that there is some factual support for a claim." *Id.*

To state a claim for relief under § 1983, a plaintiff must show he was deprived of a federal right by a person acting under color of state law. *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001). Under § 1915(e)(2)(B)(i), courts may dismiss as frivolous claims that are "based on an indisputably meritless legal theory" or "whose factual contentions are clearly baseless." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001).

Furthermore, the same standards govern dismissal for failure to state a claim under Fed. R. Civ. P. 12(b) and dismissal for failure to state a claim under § 1915(e)(2)(B)(ii). *Mitchell v. Farcass,* 112 F.3d 1483, 1490 (11th Cir. 1997). Thus, under 28 U.S.C. § 1915(e)(2)(B)(ii), the court may dismiss a complaint that fails "to state a claim for relief that is plausible on its face."

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Although federal courts give liberal construction to *pro se* pleadings, courts "nevertheless have required them to conform to procedural rules." *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) (per curiam) (quotation omitted). Rule 8 requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). There is no required technical form, but "each allegation must be simple, concise, and direct." *Id.* at 8(d)(1). The statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly,* 550 U.S. at 555. (quotation omitted) (ellipses in original). Additionally, each separate claim should be presented in a separate numbered paragraph, with each paragraph "limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).

"[A] pro se pleading must still suggest that there is at least some factual support for a claim." *Waldman*, 871 F.3d at 1289 (internal citations omitted). "Yet even in the case of *pro se* litigants this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014) (citing *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998)); *see Rodriguez v. Scott*, 775 F. App'x 599, 603 (11th Cir. 2019). *Pro se* pleadings "must suggest (even if inartfully) that there is at least some factual support for a claim; it is not enough to just invoke a legal theory devoid of any factual basis." *Brown v. Orange Cnty. Corr. Dep't*, 699 F. App'x 916, 916-17 (11th Cir. 2017) (quoting *Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015) (internal quotations omitted).

### III. DISCUSSION

Plaintiff advances claims against Defendant Martin, Colon, and Papillon in his Amended Complaint. The Court already determined that Plaintiff's claim of excessive force against Defendant Martin shall proceed. The Court will address the previously dismissed claims against Defendant Martin for knowingly submitting false statements and the deliberate indifference claims against Defendants Colon and Papillon.

### A.   Violation of Due Process

The Fourteenth Amendment prohibits any state from depriving a person of life, liberty, or property without due process of law. *See* U.S. Const. amend. XIV. The Supreme Court in *Sandin v. Conner*, 515 U.S. 472 (1995), recognized in the prison context that states may create liberty interests protected by the Due Process Clause, "[b]ut these interests will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 472. A due process violation, arising from a deprivation of a prisoner's liberty, may be established (1) when a change in a prisoner's confinement is so severe it essentially exceeds the sentence imposed by the court, or (2) when the liberty interest is created by the state. *Bass v. Perrin*, 170 F.3d 1213 (11th Cir. 1999) (citations omitted).

**Defendant Martin**

Plaintiff alleges Defendant Martin violated his due process rights by lying on the disciplinary report when she stated that plaintiff swung his blind cane at her. Plaintiff's claim that Defendant Martin issued a false disciplinary report is only cognizable under § 1983 if Plaintiff can show that the report resulted in him suffering an atypical and significant hardship. *See e.g. Gonzalez v. Monty*, 89 F.Supp.2d 1347, 1351 (S.D. Fla. 2000).

The Court previously denied this claim, finding that Plaintiff did not "allege any facts to suggest that the denial of medical treatment was related to his punishment resulting from the disciplinary report" and that Plaintiff did not allege "any facts to suggest that his punishment exposed him to conditions substantially different from those experienced by inmates in the general population of the prison." ECF No. [9] at 10 (internal citations omitted).

Here, Plaintiff alleges that due to the administrative confinement, he lost access to medical treatment, communication with family members, and the ability to maintain personal hygiene. However, Plaintiff's allegations are conclusory. He alleges that he lost access to required medical treatments but fails to allege facts that support that the delay in medical treatment was due to his confinement. He fails to allege that a condition of his administrative confinement barred him from access to medical treatment. Additionally, on May 14, 2020, while Plaintiff was still in confinement, he "personally handed another sick-call request to nurse Ms. Moonsammy and showed the nurse both his infected eyes . . . Nurse Moonsammy assured Plaintiff that she would immediately take the request to the sick-call [nurse]." *Id.* at 11 ¶ 37-38. Although Plaintiff states that he never received a response, there is no indication that this was a result of his confinement. Moreover, given Plaintiff's other allegations, Plaintiff's access to medical care did not change after he was released from confinement.

Plaintiff's amended claim that Defendant Martin violated his due process fails to state a claim for which relief can be granted and must be dismissed.

**B.    Deliberate indifference**

The Eighth Amendment prohibits any punishment which violates civilized standards of decency or involves "the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (quoting *Gregg v. Ga.*, 428 U.S. 153, 173 (1976)); *see also Campbell v. Sikes*, 169 F.3d 1353, 1363 (11th Cir. 1999). Accordingly, the Supreme Court has interpreted the Eighth

Amendment to prohibit "deliberate indifference to serious medical needs of prisoners." *Estelle*, 429 U.S. at 103. To prevail on an Eighth Amendment deliberate indifference claim, a plaintiff must demonstrate the defendant acted with deliberate indifference to that need and causation between that indifference and the plaintiff's injury. *See Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009).

To establish the first element, that a prison official acted with deliberate indifference to a serious medical need, a plaintiff must show that the prison official had (1) "subjective knowledge of a risk of serious harm;" (2) disregarded that risk; by (3) conduct that is "more than mere negligence." *Mitchell v. Nobles*, 873 F.3d 869, 876 (11th Cir. 2016) (citing *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)).

The subjective component requires the plaintiff to demonstrate that the prison official acted wantonly, with deliberate indifference to the plaintiff's serious needs. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991). Mere negligence will not suffice. *See Farmer*, 511 U.S. at 835-36. "An official disregards a serious risk by more than mere negligence 'when he [or she] knows that an inmate is in serious need of medical care, but he [or she] fails or refuses to obtain medical treatment for the inmate.'" *Nam Dang v. Sheriff, Seminole Cnty. of Fla.*, 871 F.3d 1272, 1280 (11th Cir. 2017) (quoting *Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1425 (11th Cir. 1997)), *overruled on other grounds by LeFrere v. Quezada*, 588 F.3d 1317, 1318 (11th Cir. 2009) (alteration in original).

The defendant's conduct must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Nam Dang*, 871 F.3d at 1280 (quoting *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)); *see also Hines v. Parker*, 725 F. App'x 801, 805 (11th Cir. 2018).

Lastly, for a plaintiff to prevail on a deliberate indifference claim, a plaintiff must demonstrate a causal connection between defendant's alleged deliberate indifference and plaintiff's injury. *See Harris v. Prison Health Servs.*, 706 F. App'x 945, 953 (11th Cir. 2017). The Court previously determined that Plaintiff's allegations were sufficient to plausibly state that Defendant Martin's unlawful use of force and Plaintiff's resulting injuries constituted a serious medical need. ECF No. [9] at 12; *see Mann v. Taser Intern., Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009) *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002) ("A serious medical need is one that has been diagnosed by a physical as mandating treatment . . . .").

Therefore, it must be determined whether the Defendants were subjectively aware of Plaintiff's condition and wantonly disregarded the risk to him by delaying adequate treatment for his injuries, and whether there is a causal connection between the alleged deliberate indifference and Plaintiff's injury.

Plaintiff advances his deliberate indifference claims based upon a theory of supervisory liability. A claim based on supervisory liability may only proceed if (1) the supervisory official personally participates in the alleged unconstitutional conduct, or (2) when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. *See Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). Plaintiff may establish a causal connection by showing that: (1) "a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fail[ed] to do so"; (2) "the supervisor's improper custom or policy le[d] to deliberate indifference to constitutional rights"; or (3) "facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Douglas v. Yates*, 535 F.3d 1316, 1322 (11th Cir. 2008). "The standard by which a supervisor is held liable in her

individual capacity for the actions of a subordinate is extremely rigorous." *Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1266 (11th Cir. 2010) (quotation marks omitted).

**Defendant Colon**

The Court previously denied this claim under a theory of supervisory liability finding that Plaintiff cannot base his claim against Defendant Colon solely on the failure of his staff to follow DCI policies and procedures. ECF No. [9] at 14. The Court stated that Plaintiff alleged only that he was never seen by medical department and not that Defendant Colon failed to contact the medical department. *Id.* at 15. Neither did Plaintiff allege that his injury was "so obvious to Defendant Colon, as a layperson, that it was 'apparent that delay would detrimentally exacerbate the medical problem.'" *Id.* (quoting *Fernandez v. Metro Dade Police Dep't*, 397 F. App'x 507, 512 (11th Cir. 2010).

Here, Plaintiff has alleged that Defendant Colon had knowledge of the serious injury caused by Defendant Martin as well as Plaintiff's pre-existing eye condition. Plaintiff filed a formal complaint against Defendant Martin describing the injuries that resulted from her excessive use of force against Plaintiff. Plaintiff sent the formal complaint via certified mail on June 5, 2020 and confirmed with DCI's legal mail representative that the formal complaint was delivered to Defendant Colon's mailbox. Plaintiff states that when he approached Defendant Colon on July 18, 2020, Defendant Colon was able to see firsthand the condition of Plaintiff's eyes. Finally, Plaintiff alleges that although Defendant Colon stated he would email the medical department, he never sent an email. Plaintiff has stated a plausible claim for relief on his deliberate indifference of a serious medical need claim against Defendant Colon.

Case No. 20-cv-23889-BLOOM

**Defendant Papillon**

The Court previously denied Plaintiff's claim against Defendant Papillon because Plaintiff failed to any facts to suggest that Defendant Papillon was subjectively aware of Plaintiff's sick calls and ignored them prior to Plaintiff's examination by Dr. Altamirano. ECF No. [9] at 16. Moreover, Plaintiff did not allege a single instance during this period where he was personally seen by Defendant Papillon. Id. at 15. Plaintiff did not allege sufficient facts to support Defendant Papillon's personal participation in the delay in medical treatment or a causal connection between any delay in treatment and the alleged constitutional deprivation. *Id.* at 16.

Here, Plaintiff alleges additional facts supporting that Defendant Papillon was aware of Plaintiff's pre-existing medical condition. However, Plaintiff's additional facts do not support the conclusion that Defendant Papillon was personally aware of the injuries Plaintiff suffered as a result of Defendant Martin's excessive force. Plaintiff's allegations that Defendant Papillon disregarded "all efforts made by both the Plaintiff and Dr. Altamirano to evaluate his serious medical condition" are conclusory and unsupported by facts that describe how Defendant Papillon disregarded these efforts. Plaintiff's amended claim that Defendant Papillon was deliberately indifferent to his serious medical need fails to state a claim for which relief can be granted and must be dismissed.

**IV. CONCLUSION**

Based upon the foregoing, it **is ORDERED AND ADJUDGED** as follows:

1. As previously determined, *see* ECF No. [9], Plaintiff's excessive force claim against Defendant Inez Martin, in her individual capacity, for the alleged unlawful use of force on May 1, 2020, shall **PROCEED**.

2. Plaintiff's deliberate indifference claim against Defendant Warden Jose Colon, in his individual capacity, for failing to ensure that his staff adhered to DCI policies and procedures following Plaintiff's May 1, 2020 injury shall **PROCEED**.

3. All other claims, including Plaintiff's claims against Defendants Papillon and Martin, are **DISMISSED** for failure to state a claim upon which relief can be granted pursuant to § 1915(e)(2)(B)(ii).

**DONE AND ORDERED** in Chambers at Miami, Florida, on February 17, 2021.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Scotty Santos Diaz, *Pro Se*
# 670614
Dade Correctional Institution
Inmate Mail/Parcels
19000 SW 377th Street
Florida City, FL 33034