UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 20-cv-23889-BLOOM**

SCOTTY SANTOS DIAZ,

      Plaintiff,

v.

SGT. INEZ MARTIN,
WARDEN JOSE COLON,
DR. FRANCK PAPILLON,

      Defendants.

_____/

**ORDER ON DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT**

    **THIS CAUSE** is before the Court upon Defendants, Sergeant Inez Martin's and Warden Jose Colon's, Motion to Dismiss, ECF No. [29] ("Motion"). The Court carefully reviewed the Motion, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons stated below, the Motion is denied in part and granted in part.

**I.    BACKGROUND**

    Plaintiff is an inmate at the Dade Correctional Institution ("Dade CI") and initiated this civil rights action pursuant to 42 U.S.C. § 1983 on September 22, 2020. ECF No. [1] (Complaint). After screening the Complaint under the Prison Litigation Reform Act ("PLRA"), the Court determined that the excessive force claim against Defendant Martin to proceed and all other claims were dismissed without prejudice. *See* ECF No. [9] at 17. Plaintiff filed a First Verified Amended Complaint under 42 U.S.C. § 1983 ("Amended Complaint"). ECF No. [16] at 5-31.[1] After

---

[1] The Court relies on the pagination generated by the electronic CM/ECF database, which appears in the

subsequent screening, a claim of deliberate indifference to a serious medical need against Defendant Colon was determined to be sufficiently pleaded along with the excessive force claim against Defendant Martin,[2] *see* ECF No. [18] at 12-13.

Plaintiff makes the following allegations in his Amended Complaint. Plaintiff is visually impaired and suffers from severe stage Open Angle Glaucoma. He previously underwent surgery to repair his vision and lost total sight in one eye. *Id.* at 9-10. On May 1, 2020, while housed at Dade CI, Plaintiff was on his way to morning meal when Defendant Martin approached him and asked why he was not wearing the blue homemade face mask issued to all inmates. *Id*. Plaintiff politely advised Defendant Martin that someone took his blue face mask; however, the face mask he was wearing was "an actual approved medical appliance issued by the medical department." *Id.* Despite being told four days earlier that inmates cannot be denied meals, *id.* at 11, Defendant Martin told Plaintiff that he was not going to eat without his blue mask, *id*. at 8. After Plaintiff again reminded Defendant Martin that he no longer had a blue mask, she responded "I don't care what happen[ed] to it," "you're not going to eat without it," "now get out of my line or I'm going to spray you." *Id*. at 9. Plaintiff requested to speak with a captain or a lieutenant and advised Defendant Martin that he was hungry and did not have any food to eat. *Id*. Defendant Martin became angry and again threatened to spray Plaintiff if he did not move from the line. *Id*.

In fear of being sprayed, Plaintiff stepped out of line, lay down on the sidewalk on his back in a horizontal position, and placed his blind cane across his stomach and both of his arms on the ground. *Id*. Defendant Martin became even angrier, shouting "I'm going to spray you" and "I don't

---

headers of all court filings.

[2] Plaintiff's claims for deliberate indifference to a serious medical need against Dr. Frank Papillon and his due process claim against Defendant Martin were dismissed for failure to state a claim. *See* ECF No. [18] at 13.

care who you want to speak to." *Id.* Plaintiff pleaded with Defendant Martin not to spray his eyes, telling her that he had already lost total sight in one of his eyes from Glaucoma. *Id.* Defendant Martin then took her can of chemical agent out, placed the nozzle directly under Plaintiff's protective eyewear, and violently sprayed into Plaintiff's surgically repaired eyes for a long period of time. *Id.* at 9-10. As a result of the spraying, Plaintiff experienced severe pain and was unable to breathe or see any light for several hours. *Id.* at 10. Plaintiff previously filed complaints and grievances against Defendant Martin for her assaults on disabled inmates but nothing was done to stop the abuse on disabled adult inmates. *Id.* at 10-11.

As a result of the spraying incident, Plaintiff was placed in administrative confinement and erroneously charged with disobeying a verbal order. *Id.* at 12. Plaintiff was dragged to an empty shower stall for decontamination. *Id.* Plaintiff advised the prison nurse that he had extreme pain in his eyes and was having difficulty breathing. *Id.* Plaintiff requested to see a doctor for his Glaucoma but was denied any further medical treatment by a physician. *Id.* In her report on the use of chemical spray incident, Defendant Martin lied, writing that Plaintiff became angry and waved his blind cane towards her in an aggressive manner. *Id.* at 12-13. Eyewitness statements confirmed Plaintiff's version of the events, affirming that he never became angry and never waved his cane at Defendant Martin. *Id.* at 13. On May 5, 2020, Plaintiff was found guilty of disobeying an order at the Disciplinary Report ("DR") hearing. *Id.* at 14.

Plaintiff was placed in administrative confinement for eighteen (18) days and his requests for sick-calls to treat the exacerbation of his pre-existing Glaucoma were ignored. *Id.* at 14-15. On May 18, 2020, Plaintiff was released from confinement. *Id.* at 15. Plaintiff continued to file sick-calls, grievances, and a "formal complaint"[3] regarding the excessive force incident and requesting

---

[3] Plaintiff advises on June 5, 2020, he sent the "formal complaint" via "certified mail directly to both Warden Colon . . . and the institutions inspector Ms. Ryan." *Id.* at 16. On July 20, 2020, Plaintiff confirmed

to see a specialist for his pre-existing and deteriorating Glaucoma. *Id.* at 12. On June 4, 2020, Nurse Mercedes evaluated Plaintiff and determined that Dr. Altamirano needed to examine him. *Id*. at 18. Dr. Altamirano determined that both of Plaintiff's eyes were infected and prescribed him antibiotic eye drops and Plaintiff signed a blue consult for an appointment with optometry. *Id.* On June 24, 2020, a week after submitting a sick-call for his still-infected eyes, Nurse Mercedes advised Plaintiff he would be seen by a doctor. *Id.* On July 16, 2020, thirteen (13) days after submitting a sick-call for his eyes and twenty-two (22) days after being told he would be seen by a doctor, Dr. Altamirano examined Plaintiff's eyes, prescribed Excedrin and "more antibiotics," advised Plaintiff "he would speak to the (C.H.O.) for consult with the optometrist," and signed a blue consult request form. *Id.* at 19.

On or about July 18, 2020, Plaintiff approached Defendant Colon inside of the C-2 dormitory and showed Defendant Colon his infected eyes and personally asked him to do two things: investigate Defendant Martin's May 1, 2020 chemical spray "assault" and advise medical that Plaintiff was in need of treatment. *Id.* at 16-17. Defendant Colon responded that he was not advised of the "assault" and that he neither received nor read Plaintiff's "formal complaint," but he stated he would email medical. *Id.* at 17. Plaintiff alleges that Defendant Colon "lied about [not] receiving Plaintiff's formal complaint" and "he never e-mailed the medical department neither." *Id.* (alteration added). Plaintiff alleges that due to the "formal complaint" along with his previous, ongoing lawsuit regarding deliberate indifference to his severe stage Open Angle Glaucoma,[4]

---

through an inmate request to the legal mail representative that a copy of the "formal complaint" had been received in Defendant Colon's mailbox. *Id.* at 17.

[4] The Court takes judicial notice of Plaintiff's previously filed civil rights actions, *Diaz v. Inch*, No. 19-cv-23954-BB (S.D. Fla. filed Sept. 24, 2019) and *Diaz v. Centurion of Florida, LLC*, No. 19-cv-24067-MGC (S.D. Fla. filed Oct. 2, 2019). ***Error! Main Document Only.****See United States v. Glover*, 179 F.3d 1300, 1302 n.5 (11th Cir. 1999) ("A court may take judicial notice of its own records and the records of inferior courts") (citation omitted).

Defendant Colon had knowledge of Plaintiff's serious medical condition prior to personally observing Plaintiff's infected eyes. *Id.* at 16, 18.

On August 5, 2020, more than ninety (90) days after the chemical spray use of force and after filing "flurries of grievances, seven sick-call request[s], . . . oral request[s] to both security and medical staff, [and] . . . a formal complaint to the Florida Department of Corrections Inspector General," Plaintiff was transported to Bascom Palmer Eye Institute for an appointment with an eye specialist. *Id.* at 20 (alterations added). On August 20, 2020, plaintiff underwent surgery on his right eye to alleviate the pain and lower the pressure. *Id.* During the three-month period between the chemical spray use of force and the surgery, Plaintiff suffered from extreme pain and discomfort. *Id.* at 24. The unnecessary delay in receiving adequate treatment caused further damage to Plaintiff's vision. *Id.*

## II.     LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 12(b)(6)

The Federal Rules of Civil Procedure require a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). In the same vein, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. These elements are required

to survive a Rule 12(b)(6) motion, which requests dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

When reviewing a motion under Rule 12(b)(6), a court generally must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in plaintiff's favor. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration All.*, 304 F.3d 1076, 1084 (11th Cir. 2002). "'*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys' and are liberally construed." *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (quoting *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998)). "Yet even in the case of *pro se* litigants this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014) (quoting *GJR Invs., Inc. v. Cty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998)).

Nonetheless, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682) (alterations in original). On a 12(b) motion, courts are generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *see also Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's

claims and is undisputed in terms of authenticity." (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002))).

### B.   PLRA Exhaustion Requirement

Under the PLRA, a prisoner confined in a jail may not bring a § 1983 action until administrative remedies, as are available, are exhausted. *See* 42 U.S.C. § 1997e(a). The exhaustion requirement applies to all inmate suits about prison life, and the inmate who alleges harm suffered from prison conditions must file a grievance and exhaust the remedies available under a state or jail's grievance procedures as a prerequisite to a federal § 1983 action. *See Johnson v. Meadows*, 418 F.3d 1152, 1155-56 (11th Cir. 2005). Further, the PLRA requires "proper exhaustion," which demands compliance with a state's deadlines and other procedural rules. *See Woodford v. Ngo*, 548 U.S. 81, 90-91, 93 (2006); *see also Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The PLRA entirely eliminates judicial discretion and instead mandates strict exhaustion, "irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). Further, the Supreme Court has repeatedly reaffirmed that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter*, 534 U.S. at 524).

Failure to exhaust administrative remedies is an affirmative defense under the PLRA and inmates are not required to specially plead exhaustion in their complaints. *See Jones*, 549 U.S. at 216. The Eleventh Circuit Court of Appeals considers exhaustion of administrative remedies as a matter in abatement and not generally an adjudication on the merits; therefore, an exhaustion defense "should be raised in a motion to dismiss, or be treated as such if raised in a motion for

summary judgment." *Bryant v. Rich*, 530 F.3d 1368, 1375 (11th Cir. 2008) (quoting *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368-69 (9th Cir. 1988)).

"Where exhaustion — like jurisdiction, venue, and service of process — is treated as a matter in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop the record." *Id.* at 1376. (footnotes omitted). The Eleventh Circuit created a two-step process to guide this analysis:

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed. This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).

> If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion. The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies. Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies.

*Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (citations omitted).

## III.    DISCUSSION

Defendants seek dismissal of the Amended Complaint on four grounds: (1) *Heck v. Humphrey*, 512 U.S. 477 (1994) bars Plaintiff's excessive force claim against Defendant Martin; (2) Plaintiff failed to exhaust his administrative remedies as to his deliberate indifference claim against Defendant Colon; (3) Plaintiff failed to state a claim for supervisor liability based on deliberate indifference against Defendant Colon; and (4) the doctrine of qualified immunity bars Plaintiff's claims. *See* ECF No. [29]. The Court addresses each argument in turn.

**A.** ***Heck v. Humphrey* Bar**

Defendant Martin argues that because disciplinary charges stemming from the May 1, 2020 chemical spray use of force have not been expunged or overturned, Plaintiff's claim for excessive use of force is barred by *Heck*, 512 U.S. at 487 (1994) and *Edwards v. Baliosk*, 520 U.S. 641, 645-46 (1997). ECF No. [29] at 7-14.

In *Heck*, the Supreme Court held that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck*, 512 U.S. at 487.

"The Supreme Court has applied *Heck* to prisoners' claims challenging prison disciplinary actions[.]" *Richards v. Dickens*, 411 F. App'x 276, 278 (11th Cir. 2011) (citing *Edwards v. Balisok*, 520 U.S. 641, 646 (1997)). But it has done so only in cases where the disciplinary action involved the loss of good-time credits that would have shortened a prisoner's term of incarceration. *See Edwards*, 520 U.S. at 646-48 (holding *Heck* barred a prisoner's complaint because it would necessarily invalidate the loss of good-time credits); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (explaining *Heck* would bar claims that would necessarily shorten the length of confinement).

The Eleventh Circuit has not extended *Heck* to apply to all disciplinary proceedings that might contradict disciplinary committee findings—only those that relate to the fact or duration of a prisoner's confinement. *See, e.g.*, *Davis v. Hodges*, 481 F. App'x 553, 555 (11th Cir. 2012) (reversing district court's judgment that *Heck* barred § 1983 claim); *Roberts v. Wilson*, 259 F. App'x 226, 229 (11th Cir. 2007) (finding *Heck* and *Baliosk* barred § 1983 claim where plaintiff

lost good time credits and disciplinary adjudication never invalidated); *Robinson v. Satz*, 260 F. App'x 209, 212 (11th Cir. 2007) (finding § 1983 claim not actionable where a conclusion that plaintiff's "due process rights were violated by the parole commission's procedures would mean that he is entitled to reinstatement of his gain-time credits").

Here, Defendant Martin admits that Plaintiff was not deprived of good-time credits. ECF No. [29] at 12. At the time of Plaintiff's disciplinary confinement, he did not have any good-time credit accumulated, meaning *Heck* is inapplicable because the confinement did not lengthen his sentence. *See Muhammad v. Close*, 540 U.S. 749, 754 (2004) (explaining *Heck* does not apply to all disciplinary proceedings and only those that necessarily lengthen incarceration).

Defendant Martin points to the "inconsistent factual allegation" requirement, which she admits is "not universal" but suggests that it should apply here. *Id.* at 8 (citing *Dixon v. Hodges*, 887 F.3d 1235, 1239 (11th Cir. 2018) ("[W[here the allegation in the § 1983 complaint is a specific one that both necessarily implies the earlier decision is invalid and is necessary to the success of the § 1983 suit itself.").[5] Defendant Martin argues that the *Rooker-Feldman* doctrine prohibits federal courts other than the Supreme Court from reviewing final judgments

The Court disagrees. The *Heck* bar does not apply "[w]hen a plaintiff alleges a fact that, if true, would conflict with the earlier punishment, but that fact is not necessary to the success of his § 1983 suit[.]" In *Dixon* itself, the case Defendant Martin cites for support, the Eleventh Circuit

---

[5] Defendant Martin also argues that because a plaintiff may seek mandamus review of an administrative prison disciplinary report, those decisions are necessarily quasi-judicial. Thus, the *Rooker-Feldman* doctrine prohibits "another full review of the incident" because "second-guessing a quasi-judicial state disciplinary panel, where there is 'some (or any) evidence' to support its holding, is equivalent to assuming that the decision was invalid . . . something federal district courts are not permitted to do." ECF No. [29] at 14 (citing *Siegel v. LePore*, 234 F.3d 1163, 1172 (11th Cir. 2000). Defendant Martin's argument cites no case law from this circuit or any other circuit in support of her contention that the *Rooker-Feldman* doctrine prohibits federal district courts from reviewing § 1983 complaints that may implicate the findings of a prison's disciplinary action. Thus, the argument is without merit.

held that *Heck* and *Baliosk* did not bar the plaintiff's § 1983 complaint. The facts resemble the facts now before the Court and merit inclusion:

> The gravamen of Dixon's § 1983 complaint is that Pollock used excessive force against him. The success of this claim is not necessarily dependent on whether Dixon lunged at Pollock or not. His disciplinary punishment, of course, establishes that he did. But that factual finding is not determinative of whether Pollock used excessive force against Dixon. It is logically possible both that Dixon lunged at Pollock and that Pollock used excessive force against him. Because 'there is a version of the facts which would allow the [punishment] to stand' alongside a successful § 1983 suit, *Heck* does not control.

*Dixon*, 887 F.3d at 1239-40 (per curiam) (alteration in original) (footnote and omitted) (quoting *Dyer v. Lee*, 488 F.3d 876, 883 (11th Cir. 2007). The "inconsistent factual allegation" rule only applies in a narrow set of circumstances where the underlying conviction and the § 1983 complaint are "logically contradictory." *Dyer*, 488 F.3d at 884; *id.* ("Indeed, the factual scenario that would force the two to contradict each other requires such a tightness of events as to be almost implausible—no violent act of the plaintiff could be unprovoked and no excessive force by the defendants could go unanswered.").

Here, like in *Dixon*, the success of Plaintiff's excessive force claim is not dependent upon whether or not Plaintiff "[swung] his cane threateningly" at Defendant Martin. ECF No. [29] at 11. It is logically possible that Plaintiff swung his cane at Defendant Martin and disobeyed her order to retrieve his blue mask *and* that Defendant Martin used excessive force against Plaintiff when she sprayed chemical agents on Plaintiff's surgically-repaired eye. *See Dixon*, 887 F.3d at 1239-40; *see also Hunter v. City of Leeds*, 941 F.3d 1265, 1276 n.12 (11th Cir. 2019) ("Because it is logically possible that [plaintiff] pointed his gun at [defendant], and that [defendant] nonetheless used excessive force in response, the *Heck* bar does not apply.").

In sum, because Plaintiff's disciplinary confinement did not prolong his incarceration and because the "inconsistent factual allegation" rule does not apply, *Heck* does not bar Plaintiff's claim.[6]

## B.  Exhaustion of Administrative Remedies

Defendant Colon argues that Plaintiff failed to exhaust administrative remedies as to the deliberate indifference claim against him. *See* ECF No. [29] at 14-21. In support, Defendant Colon advises that Plaintiff was required to provide "as much relevant information" as reasonably possible in his grievances. ECF No. [29] at 20 (quoting *Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000)). Because Plaintiff did not name Defendant Colon in any grievances or appeals, he failed to "put Warden Colon on notice" that he intended to hold Defendant Colon responsible for deliberate indifference. *Id.* Moreover, the fact that Plaintiff named other prison and medical officials in his grievances "could not have put Dade C.I. and [FDOC] officials 'on notice of all of the issues in contention and allow [administrators] an opportunity to investigate those issues' as they pertain to Warden Colon." *Id.* at 21 (quoting *Harvard v. Inch*, 411 F. Supp. 3d 1220, 1224 (N.D. Fla. 2019) (second alteration in original). Defendant Colon asserts that allowing Plaintiff to proceed with his deliberate indifference claim defies the purpose of the PLRA's exhaustion requirement. ECF No. [29] at 16-17 (quoting *Harvard*, 411 F. Supp. 3d at 1224 ("allowing claims to proceed without any level of detail would thwart the purpose of the PLRA's exhaustion requirement.").

The Florida Department of Corrections ("FDOC") grievance procedures require an inmate to: "(1) file an informal grievance to the staff member responsible for the particular area of the

---

[6] Defendants argue further that the deliberate indifference claim is also barred by *Heck* "based on Warden Colon's failure to take disciplinary actions against Sgt. Martin or otherwise act on Plaintiff's 'Formal Complaint' for the May 1, 2020 incident." ECF No. [29] at 14. The Court summarily rejects Defendants' wholly unsupported and conclusory argument.

problem, Fla. Admin. Code Ann. r. 33-103.005(1)(a); (2) file a formal grievance with the warden's office, *id.* at r. 33-103.006(1); and (3) submit an appeal to the Office of the Secretary of the FDOC, *id.* at r. 33-103.007(1)." *Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218 (11th Cir. 2010); *see also Dimanche v. Brown*, 783 F.3d 1204, 1211 (11th Cir. 2015). "[I]f an inmate is filing a medical grievance . . . the initial informal grievance step may be omitted." *Id.* (citing Fla Admin Code. Ann. r. 33-103.006(3)(e))."To exhaust these remedies, prisoners ordinarily must complete these steps in order and within the time limits set forth in § 33-103.011, and must either receive a response or wait a certain period of time before proceeding to the next step." *Pavao v. Sims*, 679 F. App'x 819, 824 (11th Cir. 2017) (per curiam) (citing Fla. Admin. Code Ann. r. 33-103.011(4)).

Plaintiff's many grievances and appeals render it undisputed that he was aware of the rules of administrative exhaustion and regularly availed himself of the process. *See generally* ECF No. [29-1]. There is also no dispute that Plaintiff filed and exhausted grievances as he complains that continuing to delay treatment to his documented Open Angle Glaucoma constitutes deliberate indifference. *See* ECF No. [29-1] at 53 (Grievance Appeal # 20-6-25352 to the Secretary of the FDOC) ("This delay in treating my serious medical condition clearly amounts to deliberate indifference and violates the 8th and 14th amendments to the United States Constitution."); *id.* at 56 (Formal Grievance # 2006-463-168) ("My vision is rapidly deteriorating and the pain has become unbearable, to continually delay follow-up treatment and/or failure to carry out the specialist orders is an act of deliberate indifference toward my prediagnosed serious medical needs."); *id.* at 59 (Grievance Appeal # 20-6-27817 to the Secretary of the FDOC) ("Due to the documented and urgent nature of my current medical condition it is an act of deliberate indifference to continually delay treating my painful and debilitating condition.").

13

As a preliminary issue, the PLRA does not require plaintiffs to specially plead exhaustion. *See Jones*, 549 U.S. at 216. The requirements of exhaustion are defined by the FDOC, not the PLRA. *Id.* at 219. Under the FDOC's grievance procedures, the only requirement as to the level of factual specificity is that "[i]ncluded facts must be accurately stated" and "[e]ach grievance must address only one issue or complaint." Fla. Admin. Code Ann. r. 33-103.006(2)(e)-(f).

Defendant Colon submitted sixty-three (63) pages of Plaintiff's grievances and appeals filed after May 1, 2020. *See generally* ECF No. [29-1]; *see also* ECF No. [29-3] ¶ 14 ("The exhibits . . . are all of Inmate Diaz's grievances since May 1, 2020 that have been appealed to the Bureau to this date[.]"). He also submitted an affidavit from Alan McManus, Bureau Chief of Policy Management and Inmate Appeals. *See* ECF No. [29-3]. McManus's affidavit concludes that after reviewing Plaintiff's appeals and related documents, he "found no appeals to the Secretary (or grievances attached to them) that name or otherwise implicate Warden Colon in any incidents or events involving [Plaintiff] on or around May 1, 2020." *Id.* at 3. However, McManus also avers that Plaintiff "does allege or make reference to 'deliberate indifference' by other, specific prison administrators, health care providers, and generally, to no specific person or entity." *Id.* at 4.

**First round of grievances**. On June 12, 2020, Plaintiff filed a medical formal grievance pursuant to Fla. Admin. Code Ann. r. 33-103.006, which permits bypassing the informal grievance step. ECF No. [29-1] at 55 (Formal Grievance # 2006-463-168). In the formal grievance addressed to the Warden, Plaintiff complained of delays in treatment for his severe stage Open Angle Glaucoma and sought a "return to Larkin Specialty Eye Clinic for the purpose of pain management and retina evaluation as prescribed by the specialist without any further unnecessary delays." *Id.* at 56. Plaintiff cautioned that further delay was an act of deliberate indifference toward his previously diagnosed medical condition but no individual was named in the grievance for causing

the delay. *Id.* On July 1, 2020, the formal grievance was denied. *Id.* at 57. On July 7, 2020, Plaintiff appealed the denial to the Secretary of the FDOC urging that the "untreated glaucoma [WILL] result in [irreversible] damage." *Id.* at 53 (Appeal # 20-6-25352) (first alteration in original)). On July 10, 2020, the appeal was denied. *Id.* at 54.

**Second round of grievances**. On July 7, 2020, Plaintiff filed a medical formal grievance complaining about delay in treatment of his "rapidly deteriorating" Glaucoma and an unrelated condition. *Id.* at 62 (Formal Grievance # 2007-463-043). Plaintiff requested no further delays because his medical needs were "potentially [irreversible] and/or life threatening." *Id.* On July 21, 2020, the formal grievance was denied. *Id.* at 63. On July 27, 2020, Plaintiff appealed the denial to the Secretary of the FDOC, advocating that he "already lost [his] right eye due to the same delays caused by both the medical staff and security," and that the consults the specialist prescribed on January 17, 2020 are "urgent." *Id.* at 58 (Appeal # 20-6-27817). Plaintiff requested to be seen by an ophthalmologist or optometrist without any further unnecessary delay. *Id.* at 60. The grievance was stamped as "received" on August 6, 2020. *See id.* at 58. More than thirty (30) calendar days passed without a response from the FDOC. *See id.* at 61 (denying appeal on November 8, 2020, more than thirty calendar days after the receipt). "Unless the grievant has agreed in writing to an extension, expiration of a time limit at any step in the process shall entitle the complainant to proceed to the next step of the grievance process." Fla. Admin. Code Ann. r. 33-103.011(4). On September 22, 2020, Plaintiff initiated the present action.

Under the first step in *Turner*, the Court must compare the parties' factual allegations and if they conflict, take the plaintiff's version of the facts as true. Here, there is no factual conflict as to whether Plaintiff availed himself of the administrative procedures. Defendant Colon does not dispute that Plaintiff exhausted administrative remedies; rather, Defendant Colon argues that the

administrative remedies were not exhausted as to him. ECF No. [29] at 18; *see* ECF No. [29-1]. Plaintiff maintains that as long as prison officials were alerted to his problem, he was not required to specifically provide notice to Defendant by naming him in his grievances. ECF No. [40] at 11-12 (citing *Parzyck*, 627 F.3d at 1218 and *Jones*, 549 U.S. at 218). The only question before the Court is whether Plaintiff was required to specifically grieve his claim of deliberate indifference as to Defendant Colon. As such, the Court proceeds to step two of the *Turner* analysis.

After reviewing the grievances and the McManus Affidavit, it is clear that *after* the May 1, 2020 excessive force incident, Plaintiff exhausted several rounds of grievances complaining of deliberate indifference to his pre-existing medical condition: severe stage Open Angle Glaucoma. Plaintiff exhausted his administrative remedies as to the deliberate indifference claim against Defendant Colon. "A prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim." *Parzyck*, 627 F.3d at 1218 (citing *Jones*, 549 U.S. at 219). Moreover, "the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued[.]" *Jones*, 549 U.S. at 219 (quoting *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004)).

Following the May 1, 2020 excessive force incident, Plaintiff fully exhausted two rounds of administrative grievances complaining about delays in medical treatment for his pre-existing Glaucoma. Separately, and in accordance with Fla. Admin. Code Ann. r. 33-103.006(2)(f), Plaintiff grieved the May 1, 2020 excessive force incident involving Defendant Martin as well as the DR he received because of it for disobeying an order. If it were proper to dismiss a lawsuit unless "every known fact was included in a grievance," it would render administrative exhaustion "'unworkable' because '[i]t would be a rare case in which defendants could not find some facts that allegedly was not included in a grievance, thus potentially leading to a fact-intensive litigation

over exhaustion at the outset of nearly every prisoner case." *Harvard*, 411 F. Supp. 3d at 1244 (quoting *Goldsmith v. White*, 357 F. Supp. 2d 1336, 1338-39 (N.D. Fla. 2005)).

On the record before the Court, Plaintiff adhered to the exhaustion requirements outlined in FDOC's procedures. Defendant Colon has not carried his burden to show that Plaintiff failed to exhaust his administrative remedies as to Plaintiff's deliberate indifference claim against Defendant Colon. Thus, dismissal on that basis is not warranted.

### C.  Deliberate Indifference and Supervisor Liability

Defendant Colon argues that Plaintiff's Complaint should be dismissed because it fails to plead facts sufficient to give rise to a claim of deliberate indifference. ECF No. [29] at 3, 21-27. He also alleges that Plaintiff's claim is "fundamentally a supervisory liability claim which may not lie because Plaintiff has failed to allege that Warden Colon personally participated in any alleged constitutional violation or that there was any causal connection" between Defendant Colon's actions and any constitutional violation. *Id.* at 27. In support, Defendant Colon contends that the "grievances and appeals" attached to the Amended Complaint do not implicate him in violating Plaintiff's Eighth Amendment rights. *See id.* at 24. Moreover, Plaintiff's allegation that Defendant Colon "saw firsthand the condition of Plaintiff's eyes is inconsequential" for two reasons: (1) it was over two and a half months after the chemical spray incident and (2) Defendant Colon is not a medical expert. *Id.* at 25.

To state a claim for deliberate indifference to a serious medical need, a plaintiff must demonstrate: (1) a serious medical need; (2) a showing that the prison official acted with deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury. *See Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009). Supervisory liability arises only "when the supervisor personally participates in the alleged unconstitutional violation or when

17

there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Mathews v. Crosby*, 480 F.3d 1265, 1270 (11th Cir. 2007) (quotation marks and citation omitted). "The necessary causal connection can be established 'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (quoting *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003)). Plaintiff may establish a causal connection by showing that: (1) "a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fail[ed] to do so"; (2) "the supervisor's improper custom or policy le[d] to deliberate indifference to constitutional rights"; or (3) "facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Douglas v. Yates*, 535 F.3d 1316, 1322 (11th Cir. 2008).

The Court previously screened the Amended Complaint under 28 U.S.C. § 1915 of the PLRA. *See generally* ECF No. [18]. The same standards govern dismissal for failure to state a claim under Fed. R. Civ. P. 12(b) and dismissal for failure to state a claim under § 1915(e)(2)(B)(ii). *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). Liberally construing Plaintiff's *pro se* Amended Complaint, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam), the Court determined that Plaintiff "stated a plausible claim for relief on his deliberate indifference of a serious medical need claim against Defendant Colon." ECF No. [18] at 11.

To recapitulate, the Court determined that Plaintiff plausibly alleged a serious medical need, *see* ECF No. [9] at 2, and that Defendant Colon had knowledge of Plaintiff's condition, *see* ECF No. [18] at 11. *See also* ECF No. [16] at 12 ("Defendant Warden Colon is already familiar

with Plaintiff's serious medical condition through previously filed preliminary injunctions . . . for, 'Failure to treat Plaintiff's serious medical needs'" (citing *Diaz v. Inch*, No. 1:19-cv-23954-BB, (S.D Fla. Sept. 24, 2019), ECF No. [5] (Order directed to Warden of Dade C.I. Regarding Inmate Allegations of Deliberate Indifference to Serious Medical Needs))).

A prison official's intentional delay of medical care is evidence of deliberate indifference. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). The Eleventh Circuit has held that "'failure to provide prompt attention' to serious medical needs 'by delaying necessary medical treatment for nonmedical reasons' shows deliberate indifference." *Sparks v. Ingle*, 724 F. App'x 692, 694 (11th Cir. 2018) (quoting *Thomas v. Town of Davie*, 847 F.2d 771, 772-73 (11th Cir. 1988)). Defendant Colon argues that the lapse of time between the May 1, 2020 excessive force incident and July 18, 2020 renders Plaintiff's allegations "inconsequential." ECF No. [29] at 25. However, the fact that Plaintiff's injuries were so obvious and apparent two and a half months after being chemically sprayed speaks to the seriousness of the initial injury and the risk of subsequent worsening without medical intervention. *See Kuhne v. Fla. Dep't of Corr.*, 745 F.3d 1091, 1096 (11th Cir. 2014) ("A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" (quoting *Mann*, 588 F.3d at 1307 (11th Cir. 2009))). The fact that Defendant Colon is not a medical professional is not relevant where he personally saw Plaintiff's infected eyes and, after assuring Plaintiff he would email the medical department, failed to do so. *See Estelle*, 429 U.S. at 104-05; *see also Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1272 (11th Cir. 2020) ("'Choosing to deliberately disregard' an inmate's complaints of pain 'without any investigation or inquiry,' we have held, constitutes deliberate indifference." (quoting *Taylor v. Hughes*, 920 F.3d 729, 734 (11th Cir. 2019))).

Plaintiff has alleged sufficient facts to infer that Defendant Colon was aware of Plaintiff's Open Angle Glaucoma and that he had personal knowledge of Plaintiff's deteriorating condition when he spoke with Plaintiff on or about July 18, 2020. Defendant Colon's failure to ensure Plaintiff received prompt medical treatment for his obviously infected eyes caused Plaintiff to suffer further unnecessary pain before he eventually underwent surgery over a month later.

To the extent the supervisory liability claim against Defendant Colon is based on a theory other than his personal participation in the alleged unconstitutional conduct, the deliberate indifference claim fails. Plaintiff has not alleged facts to support either a history of widespread abuse such that it would put Defendant Colon on notice or an inference that Defendant Colon had an improper custom or policy which led to the deliberate indifference. Similarly, Plaintiff has not alleged any facts to support an inference that Defendant Colon directed his subordinates to act unlawfully or that he knew subordinates were acting unlawfully and he failed to stop them.

Viewed in the light most favorable to Plaintiff, as the Court must on a motion to dismiss, the Amended Complaint sufficiently states a supervisor liability claim for deliberate indifference to a serious medical need against Defendant Colon in his individual capacity based on his personal participation in the constitutional deprivation.

### D.  Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability,'" the Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Id.* at

231-32 (quoting *Mitchell v. Forsyth*, 472 U.S. 511 (1985) and *Hunter v. Bryant*, 502 U.S. 224, 227

(1991)). The doctrine shields "all but the plainly incompetent or those who knowingly violate the

law." *Ghates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018) (quoting *Ashcroft v. al-Kidd*, 563

U.S. 731, 743 (2011))

      "Qualified immunity offers complete protection for individual government officials

performing discretionary functions 'insofar as their conduct does not violate clearly established

statutory or constitutional rights of which a reasonable person would have known.'" *Randall v.

Scott*, 610 F.3d 701, 714 (11th Cir. 2010) (quoting *Harlow*, 457 U.S. at 818). The parties do not

dispute that Defendants were acting pursuant to their discretionary functions. *See* ECF Nos. [29]

at 27-32, [40] at 14-16; *Morton v. Kirkwood*, 707 F.3d 1276, 1281 (11th Cir. 2013) (finding that

when plaintiff did not dispute that defendants were acting pursuant to their discretionary authority

at the time of the alleged constitutional violation, defendants met their burden). The burden then

shifts to the plaintiff to rebut the qualified immunity defense. First, the court must determine

whether, "[t]aken in the light most favorable to the party asserting the injury, [] the facts alleged

show the officer's conduct violated a constitutional right[.]" *Saucier v. Katz*, 533 U.S. 194, 201

(2001). Second, if a constitutional right would have been violated under the plaintiff's version of

the facts, the court must then determine "whether the right was clearly established." *Id.* Courts

"may consider these two prongs in either order; an official is entitled to qualified immunity if the

plaintiff fails to establish either." *Piazza v. Jefferson Cnty., Ala.*, 923 F.3d 947, 951 (11th Cir.

2019) (citing *Jacoby v. Baldwin Cnty.*, 835 F.3d 1338, 1344 (11th Cir. 2016)).

      Moreover, "only Supreme Court cases, Eleventh Circuit caselaw, and [Florida] Supreme

Court caselaw can 'clearly establish' law in this circuit." *Thomas ex rel. Thomas v. Roberts*, 323

F.3d 950, 955 (11th Cir. 2003) (citing *Hamilton By & Through Hamilton v. Cannon*, 80 F.3d 1525,

1532 n.1 (11th Cir. 1996)). The essence of this inquiry is the "public official's objective reasonableness, regardless of his underlying intent or motivation." *Kingsland v. City of Miami*, 382 F.3d 1220, 1231 (11th Cir. 2004) (citing *Harlow*, 457 U.S. at 819). "To be clearly established, the contours of an asserted constitutional right 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Jones v. Cannon*, 174 F.3d 1271, 1282 (11th Cir. 1999) (quoting *Anderson v. Creighton*, 483 U.S. 635 (1987)). Indeed, "in the light of pre-existing law, the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640. "Qualified immunity 'gives ample room for mistaken judgments' but does not protect 'the plainly incompetent or those who knowingly violate the law.'" *Kingsland*, 382 F.3d at 1231-32 (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)).

Nonetheless, "[t]he Supreme Court and [the Eleventh Circuit] have stated that a plaintiff cannot strip a § 1983 defendant of his qualified immunity by citing to general rules or abstract rights." *Jones*, 174 F.3d at 1282 (citing *Anderson*, 483 U.S. at 639); *see also Walker v. Schwalbe*, 112 F.3d 1127, 1132 (11th Cir. 1997) ("Plaintiffs may not discharge their burden [of showing that a right is clearly established] by referring to general rules and abstract rights."). "Qualified immunity focuses on the actual, specific details of concrete cases." *Walker*, 112 F.3d at 1132. Indeed, "'clearly established law' should not be defined 'at a high level of generality'" but "must be 'particularized' to the facts of the case" because otherwise, "'[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (citations omitted).

Construing the allegations in the light most favorable to Plaintiff, Defendants are not entitled to qualified immunity. Defendant Martin argues that she is entitled to qualified immunity

because "Plaintiff steered his case into *Heck* territory and the disciplinary records show that Sgt. Martin acted within the scope of her discretionary authority in applying chemical spray to Plaintiff[.]" ECF No. [29] at 32. Defendant Martin's argument fails. The Eleventh Circuit has stated that "a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court decisions in *Hudson* [*v. McMillian*, 503 U.S. 1 (1992)] and *Whitley* [*v. Albers*, 475 U.S. 312 (1986)]." *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002) (citing *Johnson v. Breeden*, 280 F.3d 1308, 1321-22 (11th Cir. 2002)). Although "there is no *per se* rule barring qualified immunity in Eighth Amendment cases," *Bowden v. Stokely*, 576 F. App'x 951, 955 (11th Cir. 2014), with regard to claims of excessive force, "[t]he only question . . . is whether the plaintiff has alleged facts sufficient to survive a motion to dismiss[,]" *Skrtich*, 280 F.3d at 1301.

The Court previously determined that Plaintiff alleged facts from which a plausible inference could be drawn that Defendant Martin used excessive force when she "deliberately sprayed a chemical agent directly into Plaintiff's eyes despite him not resisting or attacking her in any manner." ECF No. [9] at 8. As a result of the incident, Plaintiff suffered extreme pain and discomfort and eventually required surgery to fix the damage done to his right eye. *Id.* at 9; *see McReynolds v. Ala. Dep't of Youth Servs.*, 204 F. App'x 819, 822 (11th Cir. 2006) (denying motion to dismiss on qualified immunity for excessive force claim where plaintiff made sufficient allegations to allow inference of defendants' malicious and sadistic intent during assault on plaintiff).

Accepting the facts alleged as true and drawing all reasonable references in favor of Plaintiff, Defendant Colon is not entitled to qualified immunity at the motion to dismiss stage. *See*

*Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) ("[I]t is proper to grant a motion to dismiss on qualified immunity grounds when the 'complaint fails to allege the violation of a clearly established constitutional right.'" (citing *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002))). Plaintiff alleged Defendant Colon was deliberately indifferent when, after personally observing Plaintiff's infected eyes, he failed to email medical as promised. A prison official's intentional delay of medical care is evidence of deliberate indifference. *See Estelle*, 429 U.S. at 104-05. The Eleventh Circuit has held that "'failure to provide prompt attention' to serious medical needs 'by delaying necessary medical treatment for nonmedical reasons' shows deliberate indifference." *Sparks*, 724 F. App'x at 694 (quoting *Thomas*, 847 F.2d at 772-73). Moreover, the case law has established that "both long and short delays can be inexcusable, depending on the medical need and the reason for the delay." *Alsobrook v. Alvarado*, 477 F. App'x 710, 713 (11th Cir. 2012); *see Harris v. Coweta Cnty.*, 21 F.3d 388, 393-94 (11th Cir. 1994) (holding that evidence of a several week delay in treating a painful hand condition created a genuine issue of material fact about deliberate indifference).

The Court previously determined that Plaintiff properly alleged violations of his constitutional rights under the Eighth Amendment. *See* ECF Nos. [9] at 17, [18] at 12-13. It was clearly established that "correctional officers could not use force maliciously or sadistically for the very purpose of causing harm." *Skrtich*, 280 F.3d at 1304-05 (citing *Whitley*, 475 U.S. at 320-21). It was clearly established that Plaintiff had a constitutional right to receive adequate medical care. *Estelle*, 429 U.S. at 104-05. It is also "well-settled that prison officials' deliberate indifference to prisoners' serious medical needs gives rise to a constitutional claim." *Harris*, 21 F.3d at 393. Therefore, the Court finds that Defendants are "not entitled to the defense of qualified immunity at this stage of the case." *St. George*, 285 F.3d at 1338.

24

Case No. 20-cv-23889-BLOOM

## IV.    CONCLUSION

Accordingly, it **is ORDERED AND ADJUDGED** that the Motion, **ECF No. [29]**, is **GRANTED IN PART AND DENIED IN PART** as follows:

1.  The Motion as to Plaintiff's excessive force claim against Defendant Martin and Plaintiff's supervisor liability for deliberate indifference against Defendant Colon based on his personal participation in the constitutional deprivation is denied.

2.  The Motion as to Plaintiff's supervisor liability claim for deliberate indifference against Defendant Colon for failing to ensure his staff adhered to Dade CI policies and procedures following Plaintiff's May 1, 2020 injury is granted.

3.  Defendants shall respond to Plaintiff's Amended Complaint, **ECF No. [16]**, on or before **June 21, 2021**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on June 7, 2021.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Scotty Santos Diaz, *Pro Se*
# 670614
Dade Correctional Institution
Inmate Mail/Parcels
19000 SW 377th Street
Florida City, FL 33034