UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-cv-23889-BLOOM

SCOTTY SANTOS DIAZ,

    Plaintiff,

v.

SGT. INEZ MARTIN,
WARDEN JOSE COLON,
DR. FRANCK PAPILLON,

    Defendants.
    _____/

**ORDER GRANTING DEFENDANT WARDEN JOSE COLON'S
MOTION FOR SUMMARY JUDGMENT**

**THIS CAUSE** is before the Court upon Defendant Warden Jose Colon's Motion for Summary Judgment, ECF No. [79] ("Motion"). The Court has carefully reviewed the Motion, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons stated below, the Motion is granted.

**I.    BACKGROUND**

Plaintiff is an inmate at the Dade Correctional Institution ("Dade CI") and initiated this civil rights action pursuant to 42 U.S.C. § 1983 on September 22, 2020. ECF No. [1] (Complaint). Plaintiff's Complaint raises claims that medical and correctional staff violated his Eighth Amendment rights. ECF No. [1]. On February 18, 2021, following the filing of an Amended Complaint, ECF No. [16], and screening pursuant to 28 U.S.C. § 1915, the Court ordered Plaintiff's claims against Warden Jose Colon ("Defendant") and Sergeant Inez Martin ("Sgt. Martin") to proceed. ECF No. [18]. The Defendants were served and thereafter filed a Motion to Dismiss. ECF

Nos. [20, 21, 29]. After review, the Court ordered that as to Plaintiff's excessive force claim against Sgt. Martin and the supervisory liability deliberate indifference claim against Warden Colon for his personal participation, the Motion to Dismiss was denied. ECF No. [49] at 25. Thereafter, the parties engaged in discovery and the Plaintiff was granted permission to file a Second Amended Complaint ("SAC").

On September 16, 2021, Defendant filed the instant Motion, ECF No. [79], along with his supporting statement of material facts, ECF No. [81] ("Defendant's SMF"), and exhibits, ECF Nos. [81-1, 81-2, 81-3, 81-4, 81-5, 81-6, 81-7, 81-8]. Plaintiff filed a response[1] in opposition to the Motion, ECF No. [101] ("Response"), opposing statements of material facts and additional facts,[2] ECF Nos. [97, 102] ("Plaintiff's SMF"; "Plaintiff's Opposition to Defendant's SMF"), and declarations and exhibits in support of Plaintiff's opposition to the Motion, ECF Nos. [95, 95-1, 95-2, 95-3, 95-4, 95-5, 95-6, 95-7, 95-8, 95-9, 95-10, 95-11, 95-12, 95-13, 96, 96-1]. Defendant filed a reply, ECF No. [108] ("Reply"), and a statement opposing Plaintiff's SMF, ECF No. [111] ("Defendant's Opposition to Plaintiff's SMF"). The instant Motion considers only Plaintiff's claim against Defendant.

## II.     MATERIAL FACTS

Based on the parties' statements of material facts in support of and opposition to the Motion, along with evidence in the record, the following facts are not genuinely in dispute unless otherwise noted.

---

[1] On October 26, 2021, Plaintiff filed its initial response on opposition to the Motion. ECF No. [94]. However, on the same day, Plaintiff filed a second response labeled "Corrected" response. ECF No. [101]. The Court considers only the latter-filed response.

[2] On October 26, 2021, Plaintiff filed its initial statement opposing Defendant's SMF. ECF No. [98]. However, on the same day, Plaintiff filed a corrected statement opposing Defendant's SMF. ECF No. [102]. The Court considers only the corrected statement.

During all relevant events in the SAC, Plaintiff was an inmate at Dade CI, and Defendant served as Warden. ECF No. [101-1] at 12. Plaintiff is a disabled inmate and suffers from severe stage primary open angle glaucoma in his left eye and neurovascular glaucoma in his right eye. ECF No. [95] at ¶¶ 3-4; *see* ECF No. [95-1]. Plaintiff is blind in his right eye. ECF No. [95] at ¶ 2; *see* ECF No. [95-1].

Per his training, Defendant stated that when an inmate approaches him expressing a medical need, he contacts the medical department by reaching out to Dena Tate, Health Services Administrator of Centurion of Florida, LLC ("Centurion"). ECF No. [101-1] at 14-15; *see* ECF No. [81-2] at 1-4 (emails from Defendant to Dena Tate regarding Plaintiff). Defendant stated that because he does not have any medical training, following up with the medical department did not necessarily mean that he understood or knew what an inmate's medical needs were. *Id.* at 63. Defendant learned of Plaintiff's disability and eye conditions in mid-2019 when, while conducting rounds, Plaintiff stopped him on more than one occasion to explain he required medical attention for his eye conditions. ECF No. [101-1] at 21-22; ECF No. [101-2] at 6.

On May 1, 2020, Plaintiff was involved in a use-of-force incident wherein Sgt. Martin deployed chemical agents into Plaintiff's eyes, causing pain and redness. ECF No. [95-2]. Soon thereafter, Defendant was notified about the use-of-force incident, but he denies being informed that the use-of-force incident involved either Plaintiff or Sgt. Martin. ECF No. [101-1] at 18-19. Following the use-of-force incident, Plaintiff underwent a post-use-of-force medical exam. ECF No. [95-2].

On May 6, 2020, while Defendant was conducting his rounds, Plaintiff complained to Defendant about his eye condition. ECF No. [101-1] at 28-29. Plaintiff maintains that he advised Defendant that Sgt. Martin "sprayed significant quantities of chemical agents directly into [his]

eyes, causing . . . unrelenting severe pain and extreme discomfort," and that he "needed to be examined by an eye doctor immediately to assess the damage" and prevent infection. ECF No. [95] at ¶¶ 18-19 (alterations added). Defendant disputes Plaintiff's ability to recall the contents of the conversation. *See* ECF No. [68] (Plaintiff did not list the May 6, 2020 conversation with Defendant in his SAC); ECF No. [101-2] at 6 (Defendant's Response to First Set of Interrogatories, dated August 2, 2021); ECF No. [95] at ¶¶ 18-19 (Plaintiff describes the May 6, 2020 conversation with Defendant for the first time) (Plaintiff's Declaration, dated October 25, 2021).

Following the conversation, Defendant emailed Dena Tate regarding Plaintiff: "Diaz, Scotty DC#670614 is in Confinement 2105 states he's not receiving eye drops. Can you assist?" ECF No. [81-2] at 4. Sick Call Clinic records indicate that on either May 6 or May 7, 2020, Plaintiff was seen by medical personnel. ECF No. [81-5] at 25; *see* ECF No. [81-8] at 2. The records note that Plaintiff reported being "pepper sprayed in the eyes," complained of pain in his bilateral eyes, and stated that he needed a renewal of his eye drop prescription. *Id.* The records also note, "no redness or irritation to either eye" and that Plaintiff was given 400mg of Ibuprofen for pain and a refill of his eyedrop prescription was placed with the pharmacy. *Id.* The Sick Call Clinic records indicate that Plaintiff was seen in the clinic again on June 4, 2020;[3] June 23, 2020; June 26, 2020; July 6, 2020; July 16, 2020; July 24, 2020; and July 28, 2020.[4] ECF No. [81-5] at 3-19, 25.

Plaintiff states that since the May 6, 2020 interaction, he did not see Defendant again until July 18, 2020, when Plaintiff approached Defendant while he was making his rounds of the C-2 dormitory. ECF No. [95] at ¶ 33. Plaintiff states that he showed Defendant his infected eyes and

---

[3] Records indicate that on June 4, 2020, Plaintiff also had an appointment with in-house Physician's Assistant Altamirano. ECF No. [81-5]; ECF No. [95-7].

[4] The Sick Call Clinic records indicate that Plaintiff did not show up for a July 14, 2020 appointment. ECF No. [85-1] at 9; ECF No. [81-5] at 21.

"personally asked him if he planned to investigate Sergeant Martin's assault on [him]." *Id.* (alteration added). Citing the May 6, 2020 conversation and the "Formal Complaint,"[5] Plaintiff also asked Defendant "to advise the medical department that [he] needed medical treatment[.]" *Id.* (alterations added). Plaintiff reports that Defendant denied knowledge of either "[the] assault" or the "Formal Complaint," but told Plaintiff he would email medical. *Id.* at ¶ 34 (alteration added). Defendant does not recall having a conversation with Plaintiff on or around July 18, 2020. ECF No. [81-3] at 9. Further, Defendant disputes that on July 18, 2020, "or any other date," that he would "make any promises or claims" to "email or otherwise contact the medical department on [Plaintiff's] behalf, unless [he] in fact did so, as [he] did on November 26, 2019, February 20, 2020, and May 6, 2020." *Id.* at ¶ 11 (alterations added); *see* ECF No. [81-2]. The parties agree that there are no witnesses or contemporaneous documents corroborating the conversation. ECF No. [102] at ¶ 24.

On July 27, 2020, Plaintiff filed a grievance appeal with the Secretary of the Florida Department of Corrections wherein he grieved the deliberate indifference of "medical staff and security" for failing to provide him with a timely ophthalmology consult. ECF No. [29-1] at 58. Defendant is not named directly in the grievance appeal. Additionally, Plaintiff states, "In the formal response Dr. F. Papillon and Warden Corrales state that [his] ophthalmology consult [had] been placed on hold due to the resurgence of Covid-19." *Id.* (alterations added). On August 5,

---

[5] On June 5, 2020, Plaintiff placed a document titled "Formal Complaint" in the prison's Legal Mail. ECF No. [95-8] at 2. The "Formal Complaint" was addressed to Defendant, the Inspector General's Office, Region (4) Inspector, and the State Attorney's Office. *Id.* It concerned his complaints about the May 1, 2020 use-of-force incident, his subsequent eye pain, and the fact that, despite submitting sick calls and orally advising staff, he had not yet been seen by a doctor to assess the damage. *Id.* at 3-9. The "Formal Complaint" was sent outside of the Florida Department of Corrections grievance procedures. *See* ECF No. [81-3] at ¶ 12. Plaintiff later confirmed that a copy of the "Formal Complaint" was placed in Defendant's mailbox. ECF No. [95-11] at 2.

2020, Plaintiff was transported to Bascolm Palmer Eye Institute for a consultation with an ophthalmologist. ECF No. [95-12]; *see id.* at 29 (showing emails between Larkin Community Hospital and Centurion scheduling Plaintiff's appointment and handwritten notes stating "[a]ppt was cancelled by Larkin Ophthalmology due to Covid 19 will R/S[,]" "*Keep as urgent[,]" and "[August 5, 2020] 11:45am Bascolm Palmer" (alterations added)). The documentation from the August 5, 2020 appointment does not mention the chemical spraying incident. *Id.* at 13. On August 20, 2020, Plaintiff had surgery on his right eye at Bascolm Palmer Eye Institute. ECF No. [95-13].

Defendant now moves for summary judgment on qualified immunity grounds, contending that there exists no record evidence that he acted with deliberate indifference toward Plaintiff's serious medical need.

## III. LEGAL STANDARD

### A. Summary Judgment

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citations to materials in the record, including, among other things, depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48). A court views the facts in the light most favorable to the non-moving party, draws "all reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility determinations, which 'are jury functions, not those of a judge.'" *Lewis v. City of Union City*, 934 F.3d 1169, 1179 (11th Cir. 2019) (quoting *Feliciano v. City of Miami Beach*, 707 F.3d

1244, 1252 (11th Cir. 2013)); *see also Crocker v. Beatty*, 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-movant's] version of the facts as true and draw all reasonable inferences in the light most favorable to him as the non-movant." (alterations added)). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252 (alterations added). "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden to demonstrate the absence of a genuine issue of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If a movant satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. But even where an opposing party neglects to submit any alleged material facts in controversy, a court cannot grant summary judgment unless it

is satisfied that all of the evidence on the record supports the uncontroverted material facts that the movant has proposed. *See Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004).

### B. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability,'" the Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Id.* at 231-32 (quoting *Mitchell v. Forsyth*, 472 U.S. 511 (1985) and *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). The doctrine shields "all but the plainly incompetent or those who knowingly violate the law." *Ghates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011))

"Qualified immunity offers complete protection for individual government officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Randall v. Scott*, 610 F.3d 701, 714 (11th Cir. 2010) (quoting *Harlow*, 457 U.S. at 818). The burden then shifts to the plaintiff to rebut the qualified immunity defense. First, the court must determine whether, "[t]aken in the light most favorable to the party asserting the injury, [] the facts alleged show the officer's conduct violated a constitutional right[.]" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, if a constitutional right would have been violated under the plaintiff's version of the facts,

the court must then determine "whether the right was clearly established." *Id.* Courts "may consider these two prongs in either order; an official is entitled to qualified immunity if the plaintiff fails to establish either." *Piazza v. Jefferson Cty.*, 923 F.3d 947, 951 (11th Cir. 2019) (citing *Jacoby v. Baldwin Cty.*, 835 F.3d 1338, 1344 (11th Cir. 2016)).

Moreover, "only Supreme Court cases, Eleventh Circuit caselaw, and [Florida] Supreme Court caselaw can 'clearly establish' law in this circuit." *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 955 (11th Cir. 2003) (citing *Hamilton By & Through Hamilton v. Cannon*, 80 F.3d 1525, 1532 n.1 (11th Cir. 1996)). The essence of this inquiry is the "public official's objective reasonableness, regardless of his underlying intent or motivation." *Kingsland v. City of Miami*, 382 F.3d 1220, 1231 (11th Cir. 2004) (citing *Harlow*, 457 U.S. at 819). "To be clearly established, the contours of an asserted constitutional right 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Jones v. Cannon*, 174 F.3d 1271, 1282 (11th Cir. 1999) (quoting *Anderson v. Creighton*, 483 U.S. 635 (1987)). Indeed, "in the light of pre-existing law, the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640. "Qualified immunity 'gives ample room for mistaken judgments' but does not protect 'the plainly incompetent or those who knowingly violate the law.'" *Kingsland*, 382 F.3d at 1231-32 (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)).

Nonetheless, "[t]he Supreme Court and [the Eleventh Circuit] have stated that a plaintiff cannot strip a § 1983 defendant of his qualified immunity by citing to general rules or abstract rights." *Jones*, 174 F.3d at 1282 (citing *Anderson*, 483 U.S. at 639; *see also Walker v. Schwalbe*, 112 F.3d 1127, 1132 (11th Cir. 1997) ("Plaintiffs may not discharge their burden [of showing that a right is clearly established] by referring to general rules and abstract rights." (alteration added)). "Qualified immunity focuses on the actual, specific details of concrete cases." *Walker*, 112 F.3d at

1132. Indeed, "'clearly established law' should not be defined 'at a high level of generality'" but "must be 'particularized' to the facts of the case" because otherwise, "'[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (alterations added; citations omitted).

### IV.  DISCUSSION

Defendant seeks summary judgment on qualified immunity grounds, arguing that there is no evidence in the record demonstrating that Defendant was deliberately indifferent to Plaintiff's serious medical need, and that based upon the particularized facts present here, precedent dictates that Defendant is entitled to qualified immunity. ECF No. [79] at 7-15. Defendant states that there is no conflicting evidence to consider in deciding whether grounds exist to maintain the claim against him. The uncontested evidence shows that Defendant "made multiple interventions with the medical department on Plaintiff's behalf," including an email Defendant sent five days after the chemical spray incident, and that Plaintiff can only offer "conclusory and unsupported claims that [Defendant] completely ignored his medical condition and 'lied' about contacting the medical department." *Id.* at 11 (alteration added).

Plaintiff disagrees, claiming that the undisputed material facts establish that after the May 1, 2020 chemical spray incident: Plaintiff directly and repeatedly told Defendant that his eyes were in severe pain and required medical treatment; during the relevant period Defendant knew Plaintiff had severe Open Angle Glaucoma; Plaintiff's eye infection worsened because Defendant refused to act; and pursuant to Eleventh Circuit precedent, Defendant's actions violated clearly established law. ECF No. [101] at 5.

The parties do not dispute that Defendant was acting pursuant to his discretionary functions. ECF No. [49] at 21 (citing ECF No. [29] at 27-32 and ECF No. [40] at 14-16); *see Morton v. Kirkwood*, 707 F.3d 1276, 1281 (11th Cir. 2013) (finding that when plaintiff did not dispute that defendants were acting pursuant to their discretionary authority at the time of the alleged constitutional violation, defendants met their burden).

The crux of Plaintiff's deliberate indifference claim is that the May 1, 2020 chemical spray incident exacerbated his pre-existing severe Open Angle Glaucoma, requiring that he receive medical treatment and that he be seen by an ophthalmologist. Plaintiff states that Defendant had personal knowledge of Plaintiff's eye condition and the chemical spray incident, but repeatedly ignored Plaintiff's requests for medical treatment, resulting in delay and worsening of Plaintiff's condition, as well as unnecessary pain and suffering.

To state an Eighth Amendment deliberate indifference to a serious medical need claim, a plaintiff must demonstrate: (1) a serious medical need; (2) a showing that the prison official acted with deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009). Supervisory liability arises only "when the supervisor personally participates in the alleged unconstitutional violation or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Mathews v. Crosby*, 480 F.3d 1265, 1270 (11th Cir. 2007) (quotation marks and citation omitted).

The parties do not dispute that Plaintiff's pre-existing medical condition, severe Open Angle Glaucoma, constitutes a serious medical need, or that Defendant had knowledge of Plaintiff's condition. ECF No. [79] at 2; ECF No. [101-1] at 21-22; ECF No. [101-2] at 6; *see* ECF No. [49] at 18-19.

11

Once a serious medical need has been objectively established, the analysis shifts to the *subjective* component, which requires proof that a defendant acted with deliberate indifference to that need. "To establish deliberate indifference, a plaintiff must show that the defendant had: '(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence.'" *Wright v. Langford*, 562 F. App'x 769, 778 (11th Cir. 2014) (quoting *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008)). Subjective knowledge is "a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence," or from a factfinder's finding that the risk of harm was obvious. *Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *see United States v. Santos*, 553 U.S. 507, 521 (2008) (plurality opinion) (noting that a person's possession of knowledge usually must be proven by circumstantial evidence). Because "a finding of deliberate indifference requires a finding of the defendant's subjective awareness of the relevant risk, a genuine issue of material fact exists only if the record contains evidence, albeit circumstantial, of such subjective awareness." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (quoting *Campbell v. Sikes*, 169 F.3d 1353, 1354 (11th Cir. 1999)).

Deliberate indifference requires evidence of a defendant's subjective knowledge of a risk of serious harm, and "disregard" of that risk "by conduct that is more than gross negligence." *Wright*, 562 F. App'x at 778. The Eleventh Circuit has provided guidance concerning the distinction between "deliberate indifference" and "mere negligence." For instance, "an official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." *Lancaster v. Monroe Cty.*, 116 F.3d 1419, 1425 (11th Cir. 1997), *overruled in part on other grounds by LeFrere v. Quezada*, 588 F.3d 1317 (11th Cir. 2009). The "deliberate indifference" standard may be met in instances where a prisoner is subjected to repeated examples of delayed, denied, or grossly incompetent or

12

inadequate medical care; prison personnel fail to respond to a known medical problem; or prison doctors take the easier and less efficacious route in treating an inmate. *See, e.g., Harris v. Coweta Cty.,* 21 F.3d 388, 393-94 (11th Cir. 1994) (indicating prison officials may nonetheless act with deliberate indifference for delaying treatment beyond a tolerable point). "No liability arises under the Constitution for an official's failure to alleviate a significant risk that he should have perceived but did not." *Wright*, 562 F. App'x at 778 (citations omitted). "[I]mputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference." *Id.* at 779 (alteration added; citation omitted).

Here, the uncontroverted evidence confirms that on May 6, 2020, while Defendant was conducting rounds, Plaintiff personally complained to Defendant about his eye condition. ECF No. [101-1] at 28-29. There is a factual dispute as to the detail Plaintiff provided to Defendant regarding his eye condition—Plaintiff asserts in his affidavit that he told Defendant that Sgt. Martin "sprayed significant quantities of chemical agents directly into [his] eyes, causing . . . unrelenting severe pain and extreme discomfort," and that he "needed to be examined by an eye doctor immediately to assess the damage." ECF No. [95] at ¶¶ 18-19 (alterations added). However, it is undisputed that on May 6, 2020, Defendant emailed Centurion Health Services Administrator Tate, advising that Plaintiff was not receiving his eye drops and asking Tate to assist. ECF No. [81-2] at 4.

Construing the allegations in the light most favorable to Plaintiff, Defendant is entitled to qualified immunity. On these facts, Plaintiff cannot demonstrate that on May 6, 2020, Defendant was deliberately indifferent to Plaintiff's serious medical needs. Plaintiff is required to "show more than mere negligence to establish a violation of the Eighth Amendment and defeat a prison official's motion for summary judgment." *McElligott*, 182 F.3d at 1255. The facts demonstrate that close in time to the chemical spray incident, Defendant was responsive to Plaintiff's medical needs.

Immediately after Plaintiff approached Defendant with complaints about his eye condition, Defendant, consistent with his training, contacted the medical department and inquired about assistance for Plaintiff. ECF No. [101-1] at 13-14; ECF No. [81-2] at 4. The evidence does not show that Defendant "fail[ed] or refuse[d] to obtain medical treatment" for Plaintiff. *McElligott*, 182 F.3d at 1255 (alterations added; citations omitted). A jury could not reasonably conclude that, based on the information known to Defendant on May 6, 2020, he deliberately ignored a serious medical condition that was obvious or known to him. *See Wright*, 562 F. App'x at 779.

Plaintiff and Defendant did not personally interact again until July 18, 2020, at the earliest. Plaintiff contends that he approached Defendant while he was making his rounds in the dormitory, showed Defendant his infected eyes, and asked Defendant to advise the medical department that he needed medical treatment. ECF No. [95] at ¶ 33. Plaintiff states that Defendant told him he would email medical but that he never did. *Id.* at ¶ 34. Defendant does not recall the conversation. ECF No. [81-3] at 9. The Parties agree that there are no witnesses or contemporaneous documents corroborating the conversation. ECF No. [102] at ¶ 24.

Even if the Court were to find that Defendant deliberately failed to email the medical department, no reasonable jury could find that Defendant's failure to act delayed treatment of Plaintiff's serious medical needs. The following additional evidence is also uncontroverted in the record. From the time of the May 1, 2020 chemical spray incident until August 5, 2020, when Plaintiff was transported to Bascolm Palmer Eye Institute for an ophthalmologist consult, Plaintiff was seen by Dade CI medical personnel on the following days: May 1, 2020; either May 6 or 7, 2020; June 4, 2020; June 23, 2020; June 26, 2020; July 6, 2020; July 16, 2020; July 24, 2020; and July 28, 2020. ECF No. [81-5] at 3-19, 25; ECF No. [95-2]. Additionally, a handwritten note on Plaintiff's August 5, 2020 medical records states that the provider canceled his previous

appointment due to Covid-19 and rescheduled it for August 5, 2020. ECF No. [915-12] at 29; *see* ECF No. [29-1] at 58 ("In the formal response Dr. F. Papillon and Warden Corrales state that my ophthalmology consult has been placed on hold due to the resurgence of Covid 19.") (July 27, 2020 Grievance Appeal #20-6-27817).

On these facts, there is no indication that even if Defendant had emailed medical that Plaintiff would have been seen at Bascolm Palmer Eye Institute any earlier than August 5, 2020. In fact, the email chain included in Plaintiff's medical file, which dates back to January 23, 2020, and does not list Defendant as a recipient or sender, reflects that Plaintiff's appointment at Bascolm Palmer Eye Institute was canceled and rescheduled due to Covid-19. ECF No. [95-12] at 29-31. Based upon the uncontroverted facts in the record, a jury could not reasonably conclude that following the July 18, 2020 interaction with Plaintiff, Defendant deliberately delayed treatment of Plaintiff's serious medical needs.

Construing the evidence in the light most favorable to Plaintiff, no reasonable juror could conclude that Defendant was deliberately indifferent to Plaintiff's serious medical needs. Plaintiff cannot show that Defendant violated Plaintiff's constitutional rights much less one that was clearly established at the time of the challenged conduct. *Grochowski v. Clayton Cty.*, 961 F.3d 1311, 1320 fn.9 (11th Cir. 2020) (finding that where no constitutional violation occurred, a court need not address whether "the right was clearly established at the time of the misconduct" (citation omitted)). Thus, Defendant is entitled to qualified immunity.[6]

---

[6] Defendant argues that Plaintiff's continued pursuit of the claim against Defendant was wholly unjustified. ECF No. [79] at 15. Defendant asks the Court to find Plaintiff's failure to withdraw the claim "to be in bad faith and [to] award any other relief it deems just and proper." *Id.* (alterations added) (citing *Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n*, 434 U.S. 412, 422 (1978)). A court will not assess opposing party's fees unless it finds "that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co.*, 434 U.S. at 422. On the record before it, the Court declines to make such a finding.

Case No. 20-cv-23889-BLOOM

## V. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant Warden Jose Colon's Motion for Summary Judgment, **ECF No. [79]**, is **GRANTED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on January 13, 2022.

BETH BLOOM
UNITED STATES DISTRICT JUDGE

Copies to:

Counsel of Record

Scotty Santos Diaz, *Pro Se*
# 670614
Dade Correctional Institution
Inmate Mail/Parcels
19000 SW 377th Street
Florida City, FL 33034