IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

SCOTTY SANTOS DIAZ,

    Plaintiff,

vs.

SGT. INEZ MARTIN, TARAMA MOISE,
SAMANTHA MOONSAMMY,
KIMBERLY MERCEDES,

    Defendants.

Case No.: 1:20-cv-23889-BB

## TARAMA MOISE, SAMANTHA MOONSAMMY, AND KIMBERLY MERCEDES' MOTION FOR SUMMARY JUDGMENT

Defendants Tarama Moise, Samantha Moonsammy, and Kimberly Mercedes (collectively the "Centurion Defendants") file this Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, S.D. Fla. L.R., and state as follows:

## INTRODUCTION

Inmate Scotty Santos Diaz's deliberate indifference lawsuit against the Centurion Defendants stems from a May 1, 2020 use-of-force event where Mr. Diaz was exposed to pepper spray by a Florida Department of Corrections security officer.[1] With respect to the Centurion Defendants, Mr. Diaz claims that he suffered eye pain and injury as a result of their medical treatment of him following his exposure to pepper spray.

---

[1] Mr. Diaz also brought claims against Sgt. Inez Martin and Warden Jose Colon related to their roles in the use of force event. ECF No. 68. Mr. Colon moved for summary judgment, ECF No. 79, which was granted by the Court, ECF No. 139. Sgt. Martin and Mr. Diaz thereafter entered into a settlement and Sgt. Martin was dismissed from this case. ECF No. 152, 153.

1

The undisputed evidence, however, shows Mr. Diaz received appropriate medical attention to address his complaints of pain and discomfort following his exposure to chemical spray and that his glaucoma condition was not exacerbated as a result his exposure to pepper spray or resulting medical care. Mr. Diaz's desire for different or additional medical treatment by the Centurion Defendants amounts to nothing more than a disagreement with the exercise of their medical judgment about the level of care he required. The law is clear that such disagreement will not support a claim of deliberate indifference.

For example, Nurse Moise, RN, conducted a post use of force medical examination of Mr. Diaz immediately after his decontamination shower—and within 30 minutes of the use of force event. Nurse Moise's examination of Mr. Diaz revealed no medical condition warranting further evaluation by a physician. Then approximately two weeks later, according to Mr. Diaz, Nurse Moonsammy, LPN, collected a sick call request from him in which he complained of pain and redness to his eyes. According to Mr. Diaz, Nurse Moonsammy told him she would take his request to the sick call nurse, and he admits there was no other treatment Nurse Moonsammy could offer him at that time. And finally, several weeks after the use of force incident, Nurse Mercedes, LPN, evaluated Mr. Diaz on four occasions in sick call clinic. Following each evaluation, Nurse Mercedes recommended Mr. Diaz be seen by a physician's assistant for further evaluation of his medical complaints (for medical conditions including eye pain, groin pain, and cold symptoms). Mr. Diaz concedes that the evidence reveals he has no viable claim against Nurse Mercedes.

But even more, Mr. Diaz cannot demonstrate a causal connection between the allegedly deliberate indifferent act of each Centurion Defendant and any resulting injury. Mr. Diaz has neither presented evidence that the medical treatment by the Centurion Defendants caused any injury, nor placed "verifying medical evidence in the record to establish the detrimental effect" of

any alleged delay in treatment by the Nurse Defendants. As set forth below, summary judgment should be entered in favor of the Centurion Defendants.

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a). This Court views the evidence and makes reasonable factual inferences in the light most favorable to the non-moving party. *Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016). "Genuine disputes of fact exist when the evidence is such that a reasonable jury could render a verdict for the non-movant." *Id.* Summary judgment should be granted if the plaintiff "fails to make a showing sufficient to establish the existence of an essential element of his case, and on which he bears the burden of proof at trial." *Id.*

While generally, "when conflicts arise between the facts evidenced by the parties," the court must "credit the nonmoving party's version," *Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005), "[s]elf-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records," *Whitehead v. Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010).

## ARGUMENT

Mr. Diaz's deliberate indifference claims against the Nurse Defendants are based on his belief that they failed to provide proper medical care to his eyes after his exposure to pepper spray. Mr. Diaz's claims are without merit.

### I.  Mr. Diaz cannot demonstrate the Centurion Defendants violated his Eighth Amendment rights.

To prevail on his Eight Amendment claims against the Centurion Defendants, Mr. Diaz must demonstrate they were deliberately indifferent to a serious medical need. *Black v. Alabama Dep't of Corr.*, 578 F. App'x 794, 795 (11th Cir. 2014). Showing deliberate indifference is a heavy burden. "[M]ere evidence of negligence in diagnosing or treating a medical condition or a showing of medical malpractice does not establish deliberate indifference." *Monteleone v. Corizon*, 686 F. App'x 655, 658 (11th Cir. 2017). "[M]edical treatment violates the [E]ighth [A]mendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (internal quotation marks omitted). When an inmate receives medical attention, "and the dispute is over the adequacy of that attention, courts should be reluctant to question the accuracy or appropriateness of medical judgments that were made." *Id.* at 1507.

To establish "deliberate indifference" to that medical need, Mr. Diaz must satisfy both a subjective and objective component:

> Subjectively, the [prison] official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . also draw the inference. Objectively, the official must have responded to the known risk in an unreasonable manner, in that he or she knew of ways to reduce the harm but knowingly or recklessly declined to act.

*Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (citations omitted).

Mr. Diaz must also show a "causal link" between each Centurion Defendant's alleged failure to act reasonably and his alleged injury. *Id.* And, to the extent Mr. Diaz argues he should have received treatment sooner, he must offer proof of "increased physical injury" caused by the alleged delay in care. *Goebert v. Lee Cty.*, 510 F.3d 1312, 1327 (11th Cir. 2007); *accord Taylor v. Adams*, 221 F.3d 1254, 1259-60 (11th Cir. 2000) (explaining that prisoner must establish that "the

4

delay does *seriously exacerbate* the medical problem" (emphasis added)); *see also Sims v. Figueroa*, -- F. App'x --, 2022 WL 188485 (11th Cir. 2022) (no deliberate indifference where inmate failed to produce evidence of an exacerbated condition where delay in medical treatment was alleged). If such proof is offered, the deliberate indifference analysis then involves three factors: (1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." *Id*.

**A. Mr. Diaz's exposure to pepper spray does not constitute a serious medical need.**

In the Eleventh Circuit, an inmate's response to pepper spray generally does not create a serious medical need because it "only causes temporary discomfort." *Danley v. Allen*, 540 F.3d 1298, 1311 (11th Cir. 2008), *overruled in part on other grounds as recognized by Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010); *see also Barcelona v. Rodriguez,* 847 F. App'x 739, 742 (11th Cir.), *cert. denied*, 142 S. Ct. 183, 211 L. Ed. 2d 74 (2021). This Circuit recognizes that pepper spray "does not cause any substantial or long-lasting injury" and is considered a response of "limited intrusiveness," "designed to disable a suspect without causing permanent physical injury." *Vinyard v. Wilson*, 311 F.3d 1340, 1348 (11th Cir. 2002). The degree of pain pepper spray causes "is constitutional because the effects are temporary—or at least are intended to be." *Thomas v. McNeil*, 2009 WL 64616, at *22 (M.D. Fla. Jan. 9, 2009), *judgment entered*, 2009 WL 605306 (M.D. Fla. Mar. 9, 2009), and *aff'd sub nom. Thomas v. Bryant*, 614 F.3d 1288 (11th Cir. 2010), and *aff'd sub nom. Thomas v. Bryant*, 614 F.3d 1288 (11th Cir. 2010). The experts in this case agree that the effects of pepper spray exposure are temporary. ECF No. 159-1 (Trattler Dep.) at 108:20-21; pp. 31-32; *see also* ECF No. 156-3 (Parrish Dep.) at 149:9-11 (testifying, for example, that ocular irrigation was not necessary to address the pepper spray exposure weeks after the use-

5

of-force incident). Pepper spray gradually dissipates and patients recover from its affects. *Id.* at 32:24-25.

Therefore, in order for the effects of pepper spray to constitute a serious medical need, Mr. Diaz must demonstrate something more than "the immediate effects of the pepper spray." *See Danley*, 540 F. 3d at 1311 (finding a plaintiff must allege the effects of prolonged exposure to pepper spray with inadequate decontamination and poor ventilation, not only the immediate effects of the pepper spray). Mr. Diaz cannot meet that burden in this case.

Video evidence demonstrates Mr. Diaz was given a timely, adequate decontamination shower in response to his exposure to pepper spray consistent with the requirements in this Circuit.[2] *See e.g.* ECF No. 159-3 (Video recording). Then, immediately after his decontamination shower, Mr. Diaz was brought for a post use of force examination by Nurse Moise. The post use of force examination record indicates that Mr. Diaz's vital signs were normal, he was alert and oriented, and that he was experiencing only redness or pinkness in his eyes. ECF No. 156-1 (Medical Record excerpt) at 1-2. The video evidence supports the medical record. In it, Mr. Diaz can be observed calmly sitting during the examination, occasionally rubbing at his eyes, but without exhibiting symptoms of medical distress. ECF No. 159-3 (Video recording).[3]

---

[2] That Mr. Diaz's expert witness, Dr. Parrish, may believe a different "water decontamination" or "ocular irrigation" of Mr. Diaz's eye should have occurred following the use of force incident, is not relevant to the Court's analysis of Mr. Diaz's deliberate indifference claim against the Centurion Defendants. The Eleventh Circuit requires only a timely, adequate decontamination shower to satisfy the constitutional requirements owed to inmates following exposure to pepper spray. *See e.g. Danley*, 540 F.3d at 1311, *see also JW by and through Tammy Williams v. Birmingham Bd. of Education*, 904 F.3d 1248, 1261 (11th Cir. 2018). Dr. Parrish's description of best-case-scenario response to a pepper spray exposure is not the constitutional standard required by this Circuit.

[3] Mr. Diaz's version of events as he stated in a declaration previously submitted is directly contradicted by the video evidence of the series of events immediately following his exposure to pepper spray in the use of force event. For example, the video recording of Nurse Moise's post-use-of-force examination does not support Mr. Diaz's statements that he described in detail his medical condition and extreme pain and requested to see an eye specialist. ECF No. 68 (Comp.) at ¶ 34-35; ECF No. 95 (Diaz Dec.) at ¶ 12-13. Contrary to Mr. Diaz's claims, the video shows Mr. Diaz's face throughout the encounter, and it is apparent that Mr. Diaz said very little—if anything at all—to Nurse Moise during the examination. ECF No. 159-3 (Video recording).

Mr. Diaz's expert witness, Dr. Parrish, agrees that Mr. Diaz's reports of pain and discomfort to the pepper spray exposure were consistent with the product's labeling. ECF No. 156-3 (Parrish Dep.) at 52:22-25; 89:4-6; 131:9-13; *see also* 130:9-14. And, as discussed below, there is no evidence that Mr. Diaz's subsequent complaints of eye pain days or weeks later can be attributed to the effects of pepper spray (or any medical treatment that could have been provided immediately after his exposure). And it is not disputed that Mr. Diaz's eye condition was not worsened by being exposed to pepper spray. *Id.* at 160:18-23. Accordingly, Mr. Diaz's exposure to pepper spray does not constitute a serious medical need.

**B. The Centurion Defendants did not engage in any conduct that a reasonable juror could find rose to the level of deliberate indifference.**

Even if Mr. Diaz's exposure to pepper spray could constitute a serious medical need, the Centurion Defendants' medical care was appropriate and reasonable. There is nothing in the evidence that could support a finding by a reasonable juror of reckless and indifferent conduct by any of the Centurion Defendants.

**1. Nurse Moise did not engage in any conduct that a reasonable juror could find rose to the level of deliberate indifference.**

Immediately after Mr. Diaz's decontamination shower, Nurse Moise, RN, conducted a post use-of-force examination of Mr. Diaz.  ECF No. 159-2 (Moise Dep.) at 24:4-7; ECF No. 156-1 (Medical Record excerpt) at 1-2. Nurse Moise visually assessed Mr. Diaz for any injuries, redness or bruising. *Id.* at 26:5-8. She also took his vital signs. *Id.* at 8-9; ECF No. 156-1 (Medical Record excerpt) at 1-2 Nurse Moise assessed Mr. Diaz's eyes and noted there was redness or pinkness in his eyes. *Id.* at 27:4-12; ECF No. 156-1 (Medical Record excerpt) at 1-2. Eye redness or pinkness is common because of the sensitivity of the eye, any irritant is going to cause redness. *Id.* at 27:18-24; ECF No. 156-3 (Parrish Dep.) at 130:9-14. Nurse Moise instructed Mr. Diaz to wash or rinse

his eyes. *Id.* at 28:7-8; ECF No. 156-1(Medical Record excerpt) at 1-2. Because her assessment of Mr. Diaz did not reveal any medical irregularity or abnormality, Mr. Diaz was released back to his cell. *Id.* at 31:6-8.

Nurse Moise was not aware of Mr. Diaz's glaucoma or vision conditions at the time she conducted the post-use-of-force examination. *Id.* at 21:4-6.

To show that Nurse Moise acted with deliberate indifference, Mr. Diaz must show "(1) that [Nurse Moise] had 'subjective knowledge of a risk of serious harm' and (2) that [she] 'disregard[ed]' that risk (3) by conduct that was 'more than mere negligence.'" *Keohane v. Fl. Dep't of Corr. Sec.*, 952 F.3d 1257, 1266 (11th Cir. 2020) (internal citations omitted). "Summary judgment will be granted in favor of a defendant unless the plaintiff presents evidence of each of these elements." *Melton v. Abston*, 841 F.3d 1207, 1223 (11th Cir. 2016).

The high deliberate indifference standard is one the Eleventh Circuit has "been at pains to emphasize." *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020); *accord Keohane*, 952 F.3d at 1266 (explaining a "prisoner bringing a deliberate-indifference claim has a steep hill to climb."); and *Swain v. Junior*, 961 F.3d 1276, 1285 (11th Cir. 2020) ("As applied in the prison context, the deliberate-indifference standard sets an appropriately high bar. A plaintiff must prove that the defendant acted with 'a sufficiently culpable state of mind.'"). The standard "'is far more onerous than normal tort-based standards of conduct sounding in negligence,' and is in fact akin to 'subjective recklessness as used in the criminal law.'" *Swain*, 961 F.3d at 1288 (quoting, respectively, *Goodman v. Kimbrough*, 718 F.3d 1325, 1332 (11th Cir. 2013), and *Farmer v. Brennan*, 511 U.S. 825, 839–40 (1994); *see also Patel v. Lanier Cty. Georgia*, 969 F.3d 1173, 1188 n.10 (11th Cir. 2020). So to prove deliberate indifference, Mr. Diaz must prove Nurse Moise had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834.

Here, the evidence does not support a finding that any reasonable jury could conclude Nurse Moise acted akin to subjective recklessness in performing the post-use-of-force examination of Mr. Diaz. Nurse Moise conducted a visual assessment of Mr. Diaz, took his vital signs, and exercised her medical judgment in determining he did not need further evaluation in the infirmary. That Mr. Diaz wishes Nurse Moise would have referred him to another provider or conducted an additional ocular irrigation[4] of his eyes does not amount to deliberate indifference. *See Hoffer*, 973 F.3d at 1271 (the standard is not a "perhaps they could be doing more" one); *accord Hammonds v. Theakston*, 833 F. App'x 295, 301 (11th Cir. 2020); *see also Harris*, 941 F.2d at 1505 ("difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment" does not support a deliberate indifference claim.)

Further, there is no evidence that Nurse Moise was subjectively aware of a serious medical need and that she drew the inference that there was a serious medical need. *See e.g. Rodriguez v. Sec. for Dep't of Corr.,* 508 F.3d 611, 617 (11th Cir. 2007) (explaining a medical provider must draw the inference that there is a serious medical need to satisfy the subjective prong); *Farmer*, 511 U.S. at 838 ("an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."). First, as described above, exposure to pepper spray is generally not considered a serious medical need. And second, Nurse Moise testified she was unaware of Mr. Diaz's eye condition at the time of her examination. ECF No. 159-2 (Moise Dep.) at 21:4-6. Mr. Diaz's self-serving declaration filed previously in this lawsuit—which is riddled with inaccuracies blatantly contradicted by both the video recording and his medical record—in which he claims he described in detail his medical condition and pain and requested to see an eye specialist is proven

---

[4] It is not disputed that Nurse Moise did not have access to any equipment to rinse Mr. Diaz's eyes during her examination of him. *Id.* at 28:8-9.

false by the video recording. In the video it is apparent that Mr. Diaz spoke very little—if at all—to Nurse Moise during their encounter. ECF No. 159-3 (Video Recording)[5]. Similarly, the post use of force examination form does not reflect any of the purported statements Mr. Diaz claims to have made. "Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records." *See Whitehead*, 403 F. Appx. at 403 (citing *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990)).

There is no evidence whatsoever that Nurse Moise subjectively believed that Mr. Diaz was at a serious risk of harm based on his exposure to pepper spray. Instead, Nurse Moise's testimony indicated that it was not uncommon for inmates to be exposed to pepper spray and that if she determined a medical need during a post-use-of-force examination, she would refer an inmate to the infirmary for further evaluation. In Nurse Moise's medical judgment, she did not believe Mr. Diaz required additional care and therefore released him back to prison security officials. In any event, as discussed below, there is no causal connection between Nurse Moise's post use of force examination and any injury to Mr. Diaz. Nurse Moise is entitled to summary judgment.

   **2. There is no evidence Nurse Moonsammy acted with deliberate indifference to a serious medical condition of Mr. Diaz.[6]**

Next, Mr. Diaz claims that Nurse Moonsammy, LPN, was deliberately indifferent to his eye pain due to an encounter on May 14, 2020 in which he claims he handed Nurse Moonsammy, LPN, a sick call request, showed her his eyes, and explained his pain and discomfort. ECF No. 95

---

[5] The Centurion Defendants' motion for leave to file this exhibit under seal, ECF No. 157, was granted by the Court, ECF No. 158.

[6] There is no evidence of a sick call request dated May 14, 2020 in the record. Nurse Moonsammy testified she had no memory of collecting a sick call request from Mr. Diaz in May 2020. However, even if the Court accepts Mr. Diaz's unsubstantiated claims solely for purposes of this motion for summary judgment, Nurse Moonsammy is entitled to summary judgment based on this purported encounter with Mr. Diaz.

(Diaz Dec.) at ¶ 23; ECF No. 159-7 (Diaz Dep.) at 31:11-14.[7] Mr. Diaz states that Nurse Moonsammy assured him that she would "immediately" take the request to the on-duty sick call nurse (a registered nurse). *Id.*; *see also* ECF No. 159-7 (Diaz Dep.) at 31:19-20; 51:24-52:9. Mr. Diaz agrees that he assumes Nurse Moonsammy gave his request to the sick call nurse as promised. ECF No. 159-7 (Diaz Dep.) at 52:11-14. Nurse Moonsammy testified she remembered taking one sick call request from Mr. Diaz while he was housed in confinement and that she put the sick call request in the sick call nurse's office. ECF No. 159-5 (Moonsammy Dep.) at 33:13-16. Mr. Diaz agrees their interaction was courteous and concedes there was nothing more Nurse Moonsammy could do at that time to offer him treatment at that time. ECF No. 159-7 (Diaz Dep.) at 58:9-11.

Nonetheless, Mr. Diaz's believes Nurse Moonsammy "could have presented [the sick call request] to one of the doctors or one of the physician's assistant[s] rather than just taking to back to the sick call process again." ECF No. 159-7 (Diaz Dep.) at 57:24-58:3. That Mr. Diaz believes Nurse Moonsammy *could* have taken his request to someone other than the sick call nurse does not amount to deliberate indifference by Nurse Moonsammy. *See Hoffer*, 973 F.3d at 1271 (the standard is not a "perhaps they could be doing more" one); *accord Hammonds*, 833 F. App'x at 301; *see also Harris*, 941 F.2d at 1505 ("difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment" does not support a deliberate indifference claim.). Mr. Diaz agrees Nurse Moonsammy represented she would take his sick call request to the sick call nurse and has no reason to believe she didn't do as she

---

[7] Contrary to Mr. Diaz's claim in his sick call request and statement in his declaration that he had not been seen by medical on May 14, 2020, Mr. Diaz was seen in sick call clinic on May 6, 2020 by A. Kenney, LPN. *See* ECF No. 156-1 (Medical Record excerpts) at 5. At the appointment, Nurse Kennedy documented in Mr. Diaz's medical record that she observed no redness or irritation in either eye. *Id.* Nurse Kennedy gave Mr. Diaz Ibuprofen 400 mg for pain and refilled his order for eye drops. *Id.* At his deposition, Mr. Diaz acknowledged that Nurse Kennedy gave him his eye drops, and agreed it was possible he took ibuprofen from her at that time for his pain. ECF No. 159-7 (Diaz Dep.) at pp. 27-30.

represented. Nurse Moonsammy testified that she recalls taking one sick call request from Mr. Diaz to the sick call nurse while Mr. Diaz was housed in confinement. And Mr. Diaz agrees that Nurse Moonsammy could not come in his cell to offer him any treatment at that time. Additionally, as an LPN, Nurse Moonsammy could not triage or otherwise dictate when Mr. Diaz was scheduled to be seen in sick call clinic in response to any submitted sick call request.[8]

On this evidence, no reasonable juror could find Nurse Moonsammy engaged in any act or omission that rises even close to the level of deliberate indifference to Mr. Diaz's medical condition.

### 3. Mr. Diaz admits Nurse Mercedes' treatment of him complied with the standard of care.

Mr. Diaz admits the facts of this case require the dismissal of his claim against Nurse Mercedes. ECF No. 149 (Motion for Leave to File Third Am. Compl.) at ¶ 13 (representing Mr. Diaz learned facts in discovery that led "him to conclude that Defendant Mercedes should be dismissed from this action."). Notwithstanding this admission, Mr. Diaz has yet to move to dismiss his deliberate indifference claims against Nurse Mercedes. As Mr. Diaz recognizes, the evidence against Nurse Mercedes demonstrates unequivocally that her treatment of him satisfied the standard of care, which is substantially more than what is required to sustain his still-pending deliberate indifference claim against her. Nurse Mercedes provided medical care to Mr. Diaz on four occasions: June 4, June 23, July 6, and July 24, 2020. On each of these encounters, Nurse

---

[8] Nurse Moonsammy later obtained her RN license. After she became an RN, Nurse Moonsammy triaged two sick call requests of Mr. Diaz: first on June 17, 2020 (ECF 156-1 (Medical Record excerpt) at 12), and again on August 23, 2020, (ECF No. 81-5 (Medical Record excerpt) at 1). As Mr. Diaz's expert witness conceded in his deposition testimony, these encounters are too removed in time for any causal relationship between them and Mr. Diaz's exposure to pepper spray. *See e.g.* ECF No. 156-3 (Parrish Dep.) at pp. 153-157. But in any event, Nurse Moonsammy exercised her medical judgment in determining the level of acuity of Mr. Diaz's requests in designating them either "routine" or "urgent", which cannot support a finding of deliberate indifference. *Harris*, 941 F.2d at 1507 (when an inmate receives medical attention, "and the dispute is over the adequacy of that attention, courts should be reluctant to question the accuracy or appropriateness of medical judgments that were made.").

Mercedes evaluated Mr. Diaz's condition, addressed his complaints, and referred him to be seen by a clinician for further evaluation.

First, on June 4, 2020, Mr. Diaz presented to sick call clinic for complaints of eye pain and discharge and groin and testicle pain. ECF No. 156-1 (Medical Record excerpts) at 9; ECF No. 159-6 (Mercedes Dep.) at 35:15-16. Nurse Mercedes noted Mr. Diaz right eye was "slightly reddened and irritated" and was "watery at th[at] time," she noted no inflammation, no purulent drainage, and no crust in the eye. *Id.*; ECF No. 159-6 (Mercedes Dep.) at 40:9-13. Nurse Mercedes performed a Snellen eye examination on Mr. Diaz. *Id.* Nurse Mercedes thereafter referred Mr. Diaz to see a clinician the same day for further evaluation regarding his eye pain and discomfort. *Id.*; ECF No. 159-6 (Mercedes Dep.) at 40:8-16.[9] Mr. Diaz's expert witness agrees the medical care provided by Nurse Mercedes on June 4, 2020 satisfied the standard of care. ECF No. 156-3 (Parrish Dep.) at 151:17-152:5.

Nurse Mercedes next encountered Mr. Diaz at sick call clinic on June 23, 2020 for complaints of continued pain in his groin, abdomen, and kidney, and continued eye pain. ECF No. 156-1 (Medical Record excerpts) at 13-16; ECF No. 159-6 (Mercedes Dep.) at 43:24-44:1. Nurse Mercedes noted Mr. Diaz had excessive tearing in his right eye, but no symptoms of infection, his eye was non-reddened, no crust, and no purulent drainage. *Id.* at 13; ECF No. 159-6 (Mercedes Dep.) at 46:14-19. As before, Nurse Mercedes referred Mr. Diaz to a clinician for further

---

[9] Mr. Diaz was seen by physician's assistant Silvano Altamirano on June 4 following Nurse Mercedes' referral. ECF No. 159-4 (Altamirano Dep.) at 17:15-24). P.A. Altamirano diagnosed Mr. Diaz with a urinary tract infection for which he prescribed Cipro. *Id.* at 14:12-13. P.A. Altamirano observed that Mr. Diaz's eye was "a little red" and did not "have any secretions." *Id.* at 14:10-12. P.A. Altamirano prescribed Erythromycin for the eye redness to prevent infection. *Id.* at 14:13-17; 20:1-2; 22:10-12; 23:22-24:8. P.A. Altamirano also gave Mr. Diaz Excedrin in response to Mr. Diaz's reports of a headache. *Id.* at 18-20. P.A. Altamirano referred Mr. Diaz to an optometrist for his glaucoma. *Id.* at 20-21. Mr. Diaz did not present to P.A. Altamirano on June 4, 2020 with any traumatic injury and no eye inflammation. *Id.* at 19:24-20:2. Mr. Diaz does not complain about P.A. Altamirano's treatment of him on June 4, 2020.

evaluation of his complaints. *Id.*; ECF No. 159-6 (Mercedes Dep.) at 47:23-25. While Mr. Diaz did not provide medical records reflecting this encounter to his expert witness for review in forming his initial opinions in this case, Dr. Parrish testified that if he had seen records demonstrating Nurse Mercedes again referred Mr. Diaz to a clinician for further evaluation it would affect his prior opinion and indicate to him that Nurse Mercedes understood Mr. Diaz's condition and the need to resolve his complaints. ECF No. 156-3 (Parrish Dep.) at 154:1-25. Dr. Parrish also testified that by this point in time there was no causal relationship between his exposure to pepper spray and his eye complaints. *Id.* at 157:7-14.

Nurse Mercedes saw Mr. Diaz for the third time in sick call clinic on July 6. ECF No. 156-1 (Medical Record excerpts) at 19-22. Nurse Mercedes noted Mr. Diaz's chief complaint was "no more eye drops, draining." *Id.* at 21. She documented Mr. Diaz's right eye had no drainage, no symptoms of infection, no redness, and no inflammation. *Id.* Nurse Mercedes submitted a request for a renewal of his eye drops to the pharmacy and again referred Mr. Diaz to a clinician regarding his right eye complaint. *Id.* at 22; ECF No. 159-6 (Mercedes Dep.) at 49:24-50:19. Again, Mr. Diaz did not provide his July 6, 2020 medical records to his expert witness to consider in forming his expert opinions. ECF No. 156-3 (Parrish Dep.) at 159:9-11.

Nurse Mercedes saw Mr. Diaz for the fourth time at sick call clinic on July 24, 2020. ECF No. 156-1 (Medical Record excerpt) at 26-28. Nurse Mercedes documented Mr. Diaz's chief complaints as "runny nose, cough." *Id*. at 26. Nurse Mercedes again referred Mr. Diaz to a provider for additional evaluation. *Id*. at 28.

As demonstrated by the evidence, and conceded by Mr. Diaz, there can be no cognizable claim for deliberate indifference against Nurse Mercedes on these undisputed facts.

**II.     Mr. Diaz cannot satisfy his burden of demonstrating a causal connection to any act or omission of the Centurion Defendants and any purported injury suffered.**

But even if Mr. Diaz could clear the high hurdle that any Centurion Defendant provided constitutionally inadequate care—which he cannot—Mr. Diaz cannot show any alleged injury caused by Nurse Moise, Nurse Moonsammy, or Nurse Mercedes. Proof of injury and causation are required to prevail on a deliberate indifference claim. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009); *see also Marbury*, 936 F.3d at 1233 (requiring "causal link" between alleged indifference and the prisoner's injury).

Here, there is no evidence that Mr. Diaz suffered any injury as a result of any act or omission of any Centurion Defendant. As discussed in Section I, Mr. Diaz experienced pain and discomfort in his eyes following his exposure to pepper spray consistent with what is to be experienced by someone exposed to pepper spray. *See e.g.* ECF No. 159-1 (Trattler Dep.) at pp. 31-32; ECF No. 156-3 (Parrish Dep.) at 52:22-25; 89:4-6. Mr. Diaz's glaucoma condition was not exacerbated by his exposure to pepper spray—or the related medical care. ECF No. 156-3 (Parrish Dep.) at 161:4-7. Mr. Diaz's migraines and elevated IOP levels reported in the weeks after the event were not caused by his exposure to pepper spray—or related medical care. *Id.* at 156:21-157:1; 157:2-6; 157:7-14. And Mr. Diaz suffered no long-term damage to his eyes as a result of his exposure to pepper spray—or medical care. ECF No. 159-1 (Trattler Dep.) 108:21-109:2; ECF No. 156-3 (Parrish Dep.) at 161:4-13.

And as reflected above, each Centurion Defendant timely rendered medical care limited only by the equipment available to them and their licenses. Nurse Moise conducted an examination of Mr. Diaz shortly after his pepper spray exposure, noted he was alert, oriented, and did not have visible injury other than redness or pinkness to his eyes consistent with exposure to pepper spray. Then, two weeks later, Nurse Moonsammy purportedly collected a sick call request from Mr. Diaz

15

complaining about eye pain and redness. There is no evidence that Nurse Moonsammy had any knowledge of Mr. Diaz's exposure to pepper spray at any point in the intervening two weeks between Nurse Moise's examination and when Mr. Diaz claims she collected a sick call request from him. And even more removed in time are Nurse Mercedes' four encounters with Mr. Diaz at sick call clinic in June and July 2020, which all parties agree satisfied the standard of care and therefore cannot be found to causally relate to any injury incurred by Mr. Diaz. And importantly, Mr. Diaz's expert witness ascribes none of his expert opinions to any particular defendant. ECF No. 156-3 (Parrish Dep.) at pp. 107-110; *see also* ECF No. 156 (Mot. to Exclude Dr. Parrish). Because of this, Mr. Diaz has offered no evidence of any injury caused by any Centurion Defendant. Summary judgment should be entered.

And there can be no credible claim by Mr. Diaz of a delay in medical care based on the undisputed facts. But to the extent he does assert such a claim of delay, Mr. Diaz must show that a delay in treatment caused him to suffer an "increased physical injury." *Goebert*, 510 F.3d at 1327, *accord Taylor*, 221 F.3d at 1259-60 (prisoner must show that "the delay does seriously exacerbate the medical problem"); *see also Sims*, 2022 WL 188485 (no deliberate indifference where inmate failed to produce evidence of an exacerbated condition where delay in medical treatment was alleged). "[T]o avoid summary judgment an inmate alleging that a delay in medical treatment constitutes a constitutional deprivation *must produce medical evidence* to establish the delay had a detrimental effect." *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006); *Simmons v. Monserrate*, 489 F. Appx. 404, 407 (11th Cir. 2012) (*quoting Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994) ("[I]mportantly, Simmons had not proffered any evidence 'verifying medical evidence' to establish the detrimental effect of delay in medical treatment."). As the Eleventh Circuit explained in *Hill*:

16

> [T]he tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay. … delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay.

40 F.3d at 1188–89 (citation and alteration omitted).

There is no such verifying medical evidence in this case. Dr. Parrish agrees that Mr. Diaz's exposure to pepper spray did not alter the course of his glaucoma condition. ECF No. 156-3 (Parrish Dep.) at 160:18-23. Similarly, Dr. Parrish testified that Diaz's migraine complained of in June 2020 was likely caused by high interocular pressure, not the pepper spray incident. *Id.* at 156:21-157:1; 157:7-14. And Mr. Diaz's exposure to pepper spray—and subsequent medical care related to that incident—did not have any bearing on Mr. Diaz's interocular pressure. *Id.* at 157:2-6. Mr. Diaz experienced no permanent eye damage as a result of the pepper spray incident or subsequent medical care thereafter. *Id.* at 160:18-23; 161:4-13. Simply put, Mr. Diaz's glaucoma was not made worse by Mr. Diaz's exposure to pepper spray or subsequent medical treatment related thereto. Because Mr. Diaz failed to submit any verifying medical evidence of harm suffered as a result of any alleged delay in care, Mr. Diaz's claim of deliberate indifference should be dismissed. *See Hill*, 40 F.3d at 1188.

Instead, Mr. Diaz's complaints of pain following his exposure to pepper spray amounts to nothing more than a *de minimis* injury. *See e.g. Kornagay v. Burt*, 2011 WL 839496 (N.D. Fla. Feb. 8, 2011) (finding prisoner that alleged "he suffered burning lungs and skin, congested breathing, tearing eyes, nasal discharge, dizziness, the sensation of respiratory distress, choking, and burns to his scalp" during the five-day period after application of 109g of OC failed to show more than a *de minimis* physical injury), *Report and Recommendation adopted*, 2011 WL 855619 (N.D. Fla. Mar. 9, 2011); *Ross v. Fead*, 2019 WL 2783757, at *3 (N.D. Fla. May 30, 2019) (plaintiff's alleged injury was not more than *de minimis* where he alleged burning sensations lasted

17

four days) (collecting cases); *see also Quinlan v. Pers. Transp. Servs. Co., LLC*, 329 F. App'x 246, 249 (11th Cir. 2009) (finding an asthmatic inmate's claims for compensatory and punitive damages for "temporary chest pain, headache, and difficulty breathing" due to a smoky smell in the transportation van did not show that an injury greater than *de minimis* was suffered).

     Mr. Diaz has done nothing more than "present[] conclusory claims, unsupported by actual facts, that had [the Centurion Defendants acted differently], his injuries would have been nonexistent or less severe." *Barreiro v. Delgado*, 2018 WL 4054909, at *1-2 (S.D. Fla. Aug. 24, 2018); *see also Whitehead*, 403 F. App'x 401, 403 (11th Cir. 2010) ("[s]elf-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records"). Mr. Diaz's claims of injury relating to the care provided by the Centurion Defendants for his exposure to pepper spray are not support by the evidence and cannot support deliberate indifference claims against the Centurion Defendants and his claims should be dismissed. !

## CONCLUSION

     The Centurion Defendants are each entitled to summary judgment because the medical treatment provided by them satisfy the requirements of the Constitution. Additionally, there is no evidence that Mr. Diaz suffered from a serious medical need following his exposure to pepper spray and no evidence that the Centurion Defendants' medical care caused Mr. Diaz any injury. The Court should enter judgment in favor of the Centurion Defendants.

                                      Respectfully submitted:

                                      *s/ Brian A. Wahl*
                                      Brian A. Wahl (FBN 95777)
                                      BRADLEY ARANT BOULT CUMMINGS LLP
                                      One Federal Place-1819 5th Avenue, N.
                                      Birmingham, AL  35203
                                      Telephone: (205) 521-8000 | Fax: (205) 521-8800

Primary Email: bwahl@bradley.com
Secondary Email: tramsay@bradley.com

Jacob Hanson (FBN 91453)
BRADLEY ARANT BOULT CUMMINGS LLP
100 North Tampa Street, Suite 2200
Tampa, FL  33602
Telephone: (813) 559-5500 | Fax: (813) 229-5946
Primary Email: jhanson@bradley.com
Secondary Email: tabennett@bradley.com
Secondary Email: tbush@bradley.com
Secondary Email: sdhayes@bradley.com

Erin D. Saltaformaggio (MS Bar No. 103999)
***Admitted Pro Hac Vice***
BRADLEY ARANT BOULT CUMMINGS LL
One Jackson Place
188 East Capitol Street, Suite 1000
Post Office Box 1789
Jackson, MS 39215-1789
Telephone: (601) 948-8000
Fax: (601) 948-3000
Primary Email: esaltaformaggio@bradley.com

***Counsel for Defendants, Tarama Moise,
Samantha Moonsammy and Kimberley Mercedes***

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 4, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to counsel of record, as follows:

**Theodore Benson Randles**
**Victoria L. Glover**
**David L. Feinberg (pro hac)**
Venable LLP
600 Massachusetts Ave NW
Washington, DC 20001
Email: trandles@venable.com
Email: vlglover@venable.com
Email: DLFeinberg@venable.com
*Attorneys for Plaintiff*

/s/ *Brian A. Wahl*
Brian A. Wahl
***Counsel for Defendants, Tarama Moise, Samantha Moonsammy and Kimberley Mercedes***